UNITED STATES of America, Plaintiff–Appellant,

v.

Myat MAUNG, Defendant–Appellee.

No. 02–12945.

United States Court of Appeals, Eleventh Circuit.

Feb. 10, 2003.

Dawn Bowen, Anne R. Schultz, Kathleen M. Salyer, Miami, FL, for Plaintiff–Appellant.

Michael Tarre, Miami, FL, for Defendant–Appellee.

Before CARNES, MARCUS and SUHRHEINRICH *, Circuit Judges.

CARNES, Circuit Judge:

Myat Maung, a permanent resident alien born in Burma (now Myanmar), was convicted on one count of conspiring, in violation of 18 U.S.C. § 371, to violate 18 U.S.C. § 2321(a) by receiving and possessing with intent to sell cars with altered identification numbers, and on one count of exporting stolen cars in violation of 18 U.S.C. § 553. In a previous appeal, we affirmed Maung's conviction but reversed his 39–month sentence because we concluded that the district court should not have imposed the U.S.S.G. § 2B6.1(b)(2) enhancement for the defendant's being in the business of receiving and selling stolen property; we also reversed as having been untimely entered the part of the judgment requiring Maung to pay $218,895.68 in restitution. *United States v. Maung*, 267 F.3d 1113, 1120, 1122 (11th Cir.2001).

On remand, the district court corrected the errors our opinion had identified and conducted another sentence hearing. The new sentence hearing focused on Maung's request for a downward departure so that he could ameliorate or avoid the adverse immigration effects of his crime. After his initial sentencing, the INS had informed Maung that it was commencing removal proceedings against him because of the conviction and sentence he had received. The Immigration and Nationality Act requires the Attorney General to remove from the United States any alien who has been convicted of an "aggravated felony," 8 U.S.C. § 1227(a)(2)(A)(iii), which includes "an offense relating to ... trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(R). Unless Maung's sentence was reduced to less than one year, those aggravated felony provisions would apply to him.

At the sentence hearing on remand, Maung presented the testimony of his father and of an immigration attorney in support of his request for a downward departure. Maung's father testified that in 1972, Maung and his family fled Burma because of his father's outspoken opposition to the military rulers who had seized power in that country. The family eventually settled in the United States where Maung's father continues to be an outspoken critic of his home country's government. He told the court that if deported to that country, Maung would face serious repercussions, including torture and political persecution, because of his father's opposition to the government.

Maung presented evidence at the sentence hearing that he was seeking to avoid removal from this country in three ways: asylum, 8 U.S.C. § 1158; withholding of removal, 8 U.S.C. § 1231(b)(3)(A); and deferral of removal under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punish-

---

* Honorable Richard F. Suhrheinrich, United States Circuit Judge for the Sixth Circuit, sitting by designation.

ment (Convention Against Torture), Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988), 23 I.L.M. 1027 (1984); 8 C.F.R. § 208.17. Maung's immigration attorney, Linda Osberg–Braun, testified as an expert witness at the sentence hearing. Among other things, she testified that if Maung's sentence were not reduced to less than one year, asylum and withholding of removal would be unavailable to him, because those procedures are not available to aliens who have been convicted of aggravated felonies, and with a sentence of one year or more Maung's conviction would qualify as an aggravated felony. She added that it would be difficult for Maung to prevail on his Convention Against Torture claim given the high burden of proof required for such claims, and she explained that it would be easier for him to establish an asylum claim.

Maung asked the district court to depart downward from the guidelines range of 30 to 37 months that he faced, to a sentence of 364 days or less, and to do it for one reason: so that he could avoid the restrictions on seeking relief from removal that Congress had imposed on those who were convicted of crimes of the type he had committed and who received sentences of one year or more. The court agreed, stating:

> I will grant the motion for downward departure on the basis that because of the extraordinary collateral consequences as detailed in *United States v. Restrepo*, [999 F.2d 640 (2d Cir.1993)], that the circumstances of the background of this defendant based upon the activity of his father and the human rights violations that presently exist in Burma, take him outside the heartland of cases that the United States Sentencing Commission has provided and the

applicable case law. While a defendant's alienage and the possibility of deportation are not normally a basis for downward departure, the facts of this particular case are so extraordinary because of the political situation in Burma, the activities that the family, specifically the father has participated in while he has been here in the United States, and circumstances under which this family left Burma, including the defendant; I do find that these circumstances take him outside the heartland of cases and I will impose a sentence accordingly.

Later in the hearing, the court told Maung, "I am giving your attorneys an opportunity to fight for you," and expressed the hope that if they won that fight he would not be back before the court as a result of a violation of supervised release.

■ This is the government's appeal from the 364–day sentence that resulted from the downward departure. We review a district court's departure from the sentencing guidelines only for an abuse of discretion, *United States v. Hoffer*, 129 F.3d 1196, 1200 (11th Cir.1997) (citing *Koon v. United States*, 518 U.S. 81, 91, 116 S.Ct. 2035, 2043, 135 L.Ed.2d 392 (1996)), but "whether a factor is a permissible basis for departure under any circumstances is a question of law" and "[a] district court by definition abuses its discretion when it makes an error of law." *Koon*, 518 U.S. at 100, 116 S.Ct. at 2047.

We begin by noting that the sentence hearing testimony of Maung's immigration attorney was incorrect in one respect. Ms. Osberg–Braun testified that if Maung received a sentence of one year or more he would be ineligible for withholding of removal, which is wrong.[1] There is nothing

---

1. Withholding of removal is not available to an alien who has been convicted of "a particularly serious crime" and "is a danger to the community of the United States." 8 U.S.C. § 1231(b)(3)(B)(ii). If an alien is convicted of an aggravated felony and sentenced to at least

in the record to indicate that misstatement affected the district court's decision, however, and every reason to believe that the district court would have departed downward in order to make Maung eligible for asylum just as it did believing it was making him eligible for withholding of removal as well as asylum. For that reason, and because the law does not permit a downward departure in either event, we will not remand to give the district court an opportunity to reiterate its error. And err it did.

In *United States v. Restrepo*, 999 F.2d 640 (2d Cir.1993), the sole authority the district court relied on to support the downward departure, the Second Circuit actually reversed a downward departure that the district court in that case had attempted to justify based upon the collateral consequences the defendant, a conditional permanent resident alien, would suffer from the conviction because he was an alien. *Id.* at 643–47. Those collateral consequences stemming from the defendant's status as an alien in *Restrepo* were ineligibility for assignment to lower-security facilities, post-imprisonment detention pending removal, and removal itself. *Id.* at 644–47. The Second Circuit's decision that those collateral consequences were insufficient to support a downward departure provides no support for the proposition

that a downward departure is appropriate in order to make removal less likely.

It is true that the *Restrepo* opinion contains dicta suggesting that alienage could in some circumstances serve as the basis for a downward departure. The opinion says of alienage that "[i]t remains, however, a characteristic that may be considered if a sentencing court finds that its effect is beyond the ordinary." *Id.* at 644. That statement is, however, only dicta. Admittedly, we did more or less repeat that dicta in our own dicta in *United States v. Veloza*, 83 F.3d 380, 382 (11th Cir.1996) (adopting the rationale of the *Restrepo* decision and noting that it had declined to rule out a downward departure because of the consequences of the defendant's alienage, "if those consequences were extraordinary in nature or degree"). Our actual holding in the *Veloza* case, however, is that the fact a defendant's status as an alien renders him ineligible to serve any part of his sentence in a halfway house does not justify a downward departure. All else on this subject in the *Veloza* opinion is dicta, and twice told dicta is still dicta. No decision to which we have been directed, or that we have found, has upheld a downward departure based upon collateral consequences related directly or indirectly to the defendant's status as an alien.

five years in prison, he is *"automatically* deemed to have committed a 'particularly serious crime.'" *In re Y–L–,* 23 I & N Dec. 270, 273 (A.G.2002) (citing 8 U.S.C. § 1231(b)(3)). If the prison sentence is less than five years, the Attorney General may still determine that the alien has been convicted of a "particularly serious crime." *Id.* Ms. Osberg–Braun's testimony that withholding of removal would automatically become unavailable to Maung if he were sentenced to one year or more in prison may have been based on prior law, which had provided that *all* aggravated felonies constitute "particularly serious crime[s]." *See* 8 U.S.C. § 1253(h)(2) (1994).

That provision has been eliminated and replaced by the current definition of "particularly serious crime" contained in the last clause of 8 U.S.C. § 1231(b)(3). *See In re Y–L–,* 23 I & N Dec. at 273 & n. 7. Accordingly, a departure from a guidelines range of 30 to 37 months down to 364 days in this case has no effect insofar as the rules relating to withholding of removal are concerned.

The attorney's testimony was correct, however, about asylum. It is not available to anyone convicted of an aggravated felony, and the crime for which Maung was convicted is an aggravated felony if the sentence imposed is one year or more.

There is one decision—another Second Circuit decision—that is directly on point. In *United States v. Aleskerova*, 300 F.3d 286, 300 (2d Cir.2002), the district court had departed downward to a sentence of under one year imprisonment for essentially the same reason as the district court in this case. It did so in order to take the conviction out of the definition of aggravated felony so that the defendant alien would not be ineligible to apply for asylum, and for the additional reason of preventing her from having to shoulder a more difficult burden in order to secure withholding of removal. *Id.* at 299–300; *see also* n. 1, above. In reversing the departure, the Second Circuit explained that " 'a court's disapproval of [a congressional] policy choice would not be an appropriate basis for a departure from the Guidelines, for the court's attempt to palliate that choice would encroach on the prerogative of the Legislative Branch.' " *Id.* (quoting *Restrepo*, 999 F.2d at 645). In other words, the prerogative of setting the immigration policy of this country belongs to Congress, not sentencing judges. A sentence hearing ought not resemble a hearing before an immigration judge. The one in this case did.

Congress has made a deliberate policy judgment about the consequences a criminal conviction should have upon an alien's ability to remain in this country, and it has set the scale accordingly. *Id.* at 301. In setting the scale, Congress has used as measurements the type of crime and the length of sentence imposed. Courts cannot reset the scale. They cannot fudge the result of the measurement Congress has mandated through the use of departures designed to reduce (or enlarge) a sentence for the sole purpose of affecting its immigration consequences. Where a conviction and sentence imposed fits within the definition of aggravated felony, no court would think of ordering the INS to treat the defendant as though he had not been con-

victed of the crime or had not received the sentence that he did. Just as courts cannot directly alter the result of the decision that Congress has made about the immigration consequences of an aggravated felony, they also cannot indirectly change that result by departing downward at sentencing in order to take a case out of the definition of aggravated felony. Yet, that is precisely what the district court in this case did.

The Second Circuit viewed things the same way we do, explaining in the *Aleskerova* case that when a district court departs downward for the purpose of taking a case out of the aggravated felony category, it "disrupt[s] the balance struck by the legislative branch between criminality, deportation, and the possibility of persecution." *Id.* We add one more thought. The effect of permitting a downward departure on these grounds would be to favor aliens with more lenient sentences than citizens of this country who commit the same crime and have the same criminal history. That result would be more than a little odd especially since, in the only instances where they speak to the difference at all, the guidelines provide that harsher sentences should be imposed upon aliens in some circumstances. *See* U.S.S.G. § 2L1.2(b)(1) (providing for an increase in offense level "[i]f the defendant previously was deported, or unlawfully remained in the United States after" convictions for certain crimes); *id.* § 2L2.2(b)(1) (providing for an increase in offense level "[i]f the defendant is an unlawful alien who has been deported").

Because we hold that a sentencing court may not depart downward for the purpose of taking a crime out of the definition of an aggravated felony in order to shield the defendant from the immigration consequences Congress has decided should follow from commission of such crimes, the

sentence in this case is vacated and the case is remanded to the district court with instructions to resentence the defendant within the applicable range of 30 to 37 months imprisonment.

VACATED AND REMANDED.