[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 9, 2011
JOHN LEY
CLERK

_____

No. 09-14204

_____

D. C. Docket No. 09-00010-CR-T-26-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JHON JAIRO VALENCIA SAAC,

Defendant-Appellant.

_____

No. 09-14228

_____

D. C. Docket No. 09-00010-CR-T-26-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS ANDRES MINA MENESES,

Defendant-Appellant.

_____

No. 09-14329

_____

D. C. Docket No. 09-00010-CR-T-26-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VICTOR RODRIGUEZ RENEGIFO,

Defendant-Appellant.

_____

No. 09-14345

_____

D. C. Docket No. 09-00010-CR-T-26-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL OTERO ESTUPINAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 9, 2011)

2

Before EDMONDSON, MARTIN and COX, Circuit Judges.

MARTIN, Circuit Judge:

This case consolidates criminal appeals by four co-defendants challenging the constitutionality of the Drug Trafficking Vessel Interdiction Act of 2008 ("DTVIA"), 18 U.S.C. § 2285. Jhon Jairo Valencia Saac, Victor Rodriguez Renegifo, Miguel Otero Estupinan, and Carlos Andres Mina Meneses ("defendants") also appeal their 108 month sentences, imposed after they pleaded guilty to conspiring to violate and to knowingly violating the DTVIA. They argue that their sentences are procedurally and substantively unreasonable. Mr. Estupinan argues separately that the district court violated Fed. R. Crim. P. 32(i)(3)(C) by failing to attach a copy of its rulings on the parties' objections to the PSI. After thorough review, and having had the benefit of oral argument, we affirm and conclude that the DTVIA is constitutional. We remand only so that the district court can attach a copy of its rulings on Mr. Estupinan's objections to the PSI.

## I. FACTUAL BACKGROUND

On January 6, 2009, a United States helicopter crew observed defendants on board a self-propelled, semi-submersible vessel that was dead in the international waters of the eastern Pacific Ocean. Defendants' semi-submersible vessel lacked a

3

flag, registration number, homeport, or navigational lights.  The next day, as the United States Coast Guard approached defendants' vessel, a helicopter crew saw the four defendants, three of whom were wearing life vests, emerge from the vessel's hatch and jump into the water.  The vessel sank within minutes.  The Coast Guard recovered all four defendants the same day.  Mr. Rodriguez Renegifo identified himself as the master of the vessel but claimed no nationality for it.  Defendants asserted that they were Colombian citizens.

The government filed a two-count indictment in federal district court.  The first count charged defendants with knowingly conspiring to operate a semi-submersible vessel without nationality and with the intent to evade detection in violation of 18 U.S.C. §§ 2285(a) and (b).  The second charged defendants with knowingly and intentionally, while aiding and abetting each other, operating and embarking in a semi-submersible vessel without nationality, with the intent to evade detection in violation of 18 U.S.C. § 2285(a) and (b).

The DTVIA provides that:

[w]hoever knowingly operates, or attempts or conspires to operate, by any means, or embarks in any submersible vessel or semi-submersible vessel that is without nationality and that is navigating or has navigated into, through, or from waters beyond the outer limit of the territorial sea of a single country or a lateral limit of that country's territorial sea with an adjacent country, with the intent to evade detection, shall be fined under this title, imprisoned not more than 15 years, or both.

4

18 U.S.C. § 2285(a). A submersible vessel is one that "is capable of operating completely below the surface of the water, including both manned and unmanned watercraft." 46 U.S.C. § 70502(f)(2). A semi-submersible vessel is "any watercraft constructed or adapted to be capable of operating with most of its hull and bulk under the surface of the water, including both manned and unmanned watercraft." Id. at § 70502(f)(1).

Defendants pleaded not-guilty at arraignment. Mr. Rodriguez Renegifo filed a motion to dismiss the indictment, arguing that 18 U.S.C. § 2285 is unconstitutional. The other defendants each filed a "motion to adopt co-defendant Rodriguez Renegifo's motion to dismiss indictment," and the district court considered Mr. Rodriguez Renegifo's motion as to all defendants. The district court denied the motion to dismiss the indictment, concluding that § 2285 is not unconstitutionally vague, does not violate the Due Process Clause, and does not exceed Congress's power under Article I, Section 8, Clause 10 of the Constitution.

After the district court denied the motion to dismiss, defendants entered unconditional guilty pleas, without plea agreements, as to both counts of the indictment. At the change of plea hearing, defendants informed the district court that, based on binding precedent, they understood that their guilty pleas would not preclude them from contesting the constitutionality of the DTVIA on appeal. The

5

district court agreed with defendants' reading of the relevant precedent. The government made no argument to the contrary.

At sentencing, the district court determined defendants' sentences by applying the 18 U.S.C. § 3553(a) factors. The district court declined to apply any offense-specific sentencing guidelines. The court sentenced each defendant to 108 months imprisonment and 3 years of supervised release for each count, all to run concurrently. The court assessed each defendant $100 per count. Defendants each filed separate, timely notices of appeal.

## II. DISCUSSION

Defendants' appeal raises four issues. First, we address whether defendants' guilty pleas preclude them from challenging the constitutionality of the DTVIA, and because we find defendants are not precluded, whether the DTVIA is constitutional. We next address the procedural and substantive reasonableness of defendants' sentences. Finally, we decide whether the district court erred by failing to attach a copy of its rulings on disputed sentencing issues to the PSI.

### A.

To begin, the government argues that defendants' voluntary, unconditional guilty pleas prevent them from challenging the constitutionality of the DTVIA, 18

6

U.S.C. § 2285. "Generally, entering a guilty plea waives a defendant's right to all non-jurisdictional challenges to a conviction." United States v. Bonilla, 579 F.3d 1233, 1240 (11th Cir. 2009). An unconditional guilty plea, however, "does not waive jurisdictional defects." United States v. Tomeny, 144 F.3d 749, 751 (11th Cir. 1998).

"Whether a claim is 'jurisdictional' depends on whether the claim can be resolved by examining the face of the indictment or the record at the time of the plea without requiring further proceedings." Id. (quotation marks omitted). A defendant's claim that the indictment failed to charge a legitimate offense is jurisdictional and is not waived upon pleading guilty. Id.; see also United States v. Meacham, 626 F.2d 503, 510 (5th Cir. 1980) ("The violation of [a defendant's] right to be free of prosecution for a nonoffense would bar his conviction even if his 'factual guilt' had been established validly.");[1] accord United States v. Brown, 586 F.3d 1342, 1350 (11th Cir. 2009). Thus, "[a] guilty plea [] does not waive the right of an accused to challenge the constitutionality of the statute under which he is convicted." United States v. Palacios-Casquete, 55 F.3d 557, 561 (11th Cir. 1995); see also Haynes v. United States, 390 U.S. 85, 87 & n.2, 88 S. Ct. 722, 725

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

(1968) (determining constitutionality of criminal statute, which defendant challenged before district court through motion to dismiss, even though defendant was convicted under that statute after pleading guilty).

The constitutionality of the DTVIA, the statute under which defendants were convicted, is a jurisdictional issue that defendants did not waive upon pleading guilty. See Tomeny, 144 F.3d at 751; Brown, 586 F.3d at 1350. It is clear that defendants did not waive their argument that Congress lacked the authority to enact the DTVIA insofar as this claim goes to the legitimacy of the offense that defendants' indictment charged. Even if defendants are factually guilty of DTVIA violations, the government would lack the power to prosecute if Congress exceeded its authority in enacting the DTVIA. For this reason, we address the merits of defendants' constitutional challenge to the DTVIA.

## B.

Defendants challenge the constitutionality of the DTVIA on two grounds, only one of which is properly before us. Defendants first argue that the DTVIA violates their procedural due process rights because it shifts to the defendant the burden of disproving essential elements of the offense and creates a presumption of guilt. Defendants lack standing to raise that argument because "[a] guilty plea serves as an admission of all the elements of a formal criminal charge . . . . [A]

8

defendant may not challenge the statute where the facts admitted by the guilty plea render the statute's alleged unconstitutionality moot as to the defendant." United States v. Skinner, 25 F.3d 1314, 1316–17 (6th Cir. 1994) (quotation marks omitted); Baxter v. Estelle, 614 F.2d 1030, 1036 (5th Cir. 1980) ("By entering a guilty plea, [a defendant] has admitted all the elements of the offense, including the very fact to be presumed."). Because defendants voluntarily pleaded guilty, thereby admitting guilt, the government never made use of any presumption, assuming that one exists, nor shifted the burden of proof to defendants.[2] Baxter, 614 F.2d at 1036.

We turn to defendants' argument that in enacting the DTVIA Congress exceeded its power under the High Seas Clause of the Constitution, Article I, § 8, cl. 10. The High Seas Clause enables Congress "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const., art. I, § 8, cl. 10. While there is a dearth of authority interpreting the scope of Congress's power under the High Seas Clause, early Supreme Court opinions intimate that statutes passed under the High Seas Clause

---

[2] Mr. Rodriguez Renegifo concedes these points. In his reply brief Mr. Rodriguez Renegifo attempts to relabel his procedural due process challenge as a substantive due process one to escape the preclusive effect of his guilty plea. Defendant's new label does not change the essential nature of the claim. Defendant's argument that the DTVIA unconstitutionally shifts the burden to defendants to prove essential elements of the offense remains one grounded in procedural due process.

9

may properly criminalize conduct that lacks a connection to the United States. See United States v. Suerte, 291 F.3d 366, 373 (5th Cir. 2002) (discussing early cases and legislation). For instance, in United States v. Palmer, 16 U.S. (3 Wheat.) 610, 630, 4 L. Ed. 471 (1818), the Court explained that "[t]he constitution having conferred on congress the power of defining and punishing piracy, there can be no doubt of the right of the legislature to enact laws punishing pirates, although they may be foreigners, and may have committed no particular offence against the United States."

Defendants argue that for Congress to criminalize conduct by statute under the High Seas Clause, the conduct must have a nexus with the United States. We first observe that the text of the clause makes no mention of such a jurisdictional nexus requirement. The clause gives Congress the power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Constit., art. I, § 8, cl. 10. The clause's text does not limit that power to only those piracies and felonies committed in waters within the territorial jurisdiction of the United States. Neither does the clause expressly limit Congress's power to only those offenses committed on or by United States citizens.

10

Defendants rely on United States v. Furlong, 18 U.S. (5 Wheat.) 184, 185, 200, 5 L. Ed. 64 (1820), as support for the proposition that the High Seas Clause allows Congress to reach only conduct with a connection to the United States. But in Furlong the Supreme Court examined the scope of a statute Congress passed pursuant to the High Seas Clause, rather than the scope of Congress's power under the High Seas Clause itself. The Court held that because the particular statute at issue included the phrase "out of the jurisdiction of any particular *State*" its scope was limited to murders committed "out of any *one of the United States*." Id. at 200 (emphasis added). The Court reasoned that "[b]y examining the context, it will be seen that *particular State* is uniformly used in contradistinction to *United States* [within the statute]." Id. Thus, the Court's analysis is a textual one, confined to an interpretation of the language and structure of the statute before it. Furlong, a statutory interpretation case, therefore, does not resolve the parties' debate over the scope of Congress's constitutional authority.

When analyzing a constitutional challenge to the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. app. § 1901 et seq., we rejected the same argument that defendants make here–that Congress exceeded its constitutional authority under the High Seas Clause in passing a statute that punishes conduct without a nexus to the United States. See United States v. Estupinan, 453 F.3d

11

1336, 1338 (11th Cir. 2006). In doing so, we explained that "this circuit and other circuits have not embellished the MDLEA with the requirement of a nexus between a defendant's criminal conduct and the United States." Id. (quotation marks omitted); see also United States v. Moreno-Morillo, 334 F.3d 819, 824 (9th Cir. 2003); United States v. Martinez-Hidalgo, 993 F.2d 1052, 1056 (3d Cir. 1993); Suerte, 291 F.3d at 375 (holding that Due Process Clause does not impose a nexus requirement because the High Seas Clause allows "for the punishment of offenses outside the territorial limits of the United States"). In the MDLEA cases, the appellants argued that offenses other than piracies may not be punished under Congress's High Seas Clause power when there is no nexus to the United States. In each case, the court concluded, however, that Congress's High Seas Clause power includes the authority to punish offenses other than piracies outside the territorial limits of the United States. See, e.g., Suerte, 291 F.3d at 375. This Court, and our sister circuits, have refused to read a jurisdictional nexus requirement into the clause.

In examining the constitutionality of the MDLEA, we concluded that the statute's extraterritorial reach was justified under the universal principle of international law. Estupinan, 453 F.3d at 1339. According to this principle, a nation may pass laws to define and punish certain crimes considered to be of

12

"universal concern." See Herero People's Reparations Corp. v. Deutsche Bank, A.G., 370 F.3d 1192, 1196 (D.C. Cir. 2004) (quotation marks omitted). We adopted the reasoning of the Third Circuit, which opined that "[i]nasmuch as the trafficking of narcotics is condemned universally by law-abiding nations, we see no reason to conclude that it is 'fundamentally unfair' for Congress to provide for the punishment of persons apprehended with narcotics on the high seas." Estupinan, 453 F.3d at 1339 (citing Martinez-Hidalgo, 993 F.2d at 1056). Thus, we reasoned that because the MDLEA criminalizes conduct that is condemned universally, the statute's extraterritorial reach was permissible.

We now conclude that the DTVIA is also justified under the universal principle and thus a constitutional exercise of Congress's power under the High Seas Clause. In passing the DTVIA, Congress reported that it:

> finds and declares that operating or embarking in a submersible vessel or semi-submersible vessel without nationality and on an international voyage is a serious international problem, facilitates transnational crime, including drug trafficking, and terrorism, and presents a specific threat to the safety of maritime navigation and the security of the United States.

Drug Trafficking Vessel Interdiction Act of 2008, Pub. L. No. 110-407, § 101, 122 Stat. 4296, 4296 (2008).[3] Congress's findings show that the DTVIA targets

---

[3] Vessels without nationality include:

criminal conduct that facilitates drug trafficking, which is "condemned universally by law-abiding nations." Estupinan, 453 F.3d at 1339 (citing Martinez-Hidalgo, 993 F.3d at 1056).

Given Congress's findings, the "protective principle" of international law provides an equally compelling reason to uphold the DTVIA. Under that principle, a nation may "assert jurisdiction over a person whose conduct outside the nation's territory threatens the nation's security or could potentially interfere with the operation of its governmental functions." United States v. Gonzalez, 776 F.2d 931, 938 (11th Cir. 1985). "The protective principle does not require that there be proof of an actual or intended effect inside the United States." Id. at 939. Those who engage in conduct the DTVIA targets threaten our nation's security by evading detection while using submersible vessels to smuggle illegal drugs or other contraband, such as illegal weapons, from one country to another, and often into the United States. See 154 Cong. Rec. H7238–39 (daily ed. July 29, 2008);

---

(A) a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed;
(B) a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and
(C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

46 U.S.C. § 70502(d)(1).

154 Cong. Rec. H10153–54, H10252–54 (daily ed. Sept. 27, 2008); H.R. Rep. No. 110-941, at 182–83 (2009); H.R. Rep. No. 110-936, at 28 (2009); see also Gonzalez, 776 F.2d at 939–40 (explaining that the distribution of narcotics may be prohibited under the protective principle).

The United States Coast Guard reported to Congress that semi-submersible vessels present "one of the emerging and most significant threats we face in maritime law enforcement today." 154 Cong. Rec. H7239 (daily ed. July 29, 2008) (statement of Rep. Daniel E. Lungren). These vessels pose a formidable security threat because they are difficult to detect and easy to scuttle or sink. 154 Cong. Rec. H7238–39; 154 Cong. Rec. H10153–54, H10252–54; H.R. Rep. No. 110-941, at 182–83; H.R. Rep. No. 110-936, at 28. These vessels therefore facilitate the destruction of evidence and hinder prosecution of smuggling offenses. See 154 Cong. Rec. H7238–39; 154 Cong. Rec. H10153–54, H10252–54.

Based on the foregoing, we conclude that Congress acted properly within its constitutional authority under the High Seas Clause in passing the DTVIA. The fact that defendants are challenging the constitutionality of a statute other than the MDLEA does not alter our conclusion about the scope of Congress's power under the High Seas Clause. See Estupinan, 453 F.3d at 1338. We declined to embellish

15

one statute passed under the High Seas Clause with a nexus requirement. We now decline defendants' invitation to rewrite the Constitution to create one.

C.

Defendants next argue that their sentences are procedurally and substantively unreasonable. "We review sentencing decisions only for abuse of discretion, and we use a two-step process." United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009); see also Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). First, we "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Shaw, 560 F.3d at 1237 (quoting Gall, 552 U.S. at 51, 128 S. at 597). "[T]he second step is to review the sentence's 'substantive reasonableness' under the totality of the circumstances, including 'the extent of any variance from the Guidelines range.'" Id. (quoting Gall, 552 U.S. at 51, 128 S. Ct. at 597). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in section 3553(a)." United States v. Alfaro-Moncado, 607 F.3d

16

720, 735 (11th Cir. 2010) (quoting United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005)).

i.

Defendants argue that their sentences are procedurally unreasonable because the district court failed to apply the proper sentencing guideline. Specifically, defendants argue that the court should have applied the border tunnel guideline, United States Sentencing Guidelines § 2X7.1 (Nov. 2008), because no offense-specific guideline had been promulgated for violations of 18 U.S.C. § 2285 at the time they were sentenced. See U.S.S.G. § 2X5.1 ("If the offense is a felony for which no guideline expressly has been promulgated, apply the most analogous offense guideline."). Section 2X7.1, the border tunnel guideline, expressly applies to violations of 18 U.S.C. § 555. That statute criminalizes the construction, finance and use of tunnels or subterranean passages that cross international borders between the United States and another country. See 18 U.S.C. § 555.

The government does not dispute that at the time of sentencing no guideline had been promulgated for DTVIA violations. Rather, the sentencing commission had proposed an amendment to the guidelines to add an offense-specific guideline for DTVIA violations:

17

**§2X7.2.**     **Submersible and Semi-Submersible Vessels**
(a) Base Offense Level: **26**
(b) Specific Offense Characteristic
(1) (Apply the greatest) If the offense involved –
(A)     a failure to heave to when directed by law enforcement officers, increase by **2** levels;
(B)     an attempt to sink the vessel, increase by **4** levels; or
(C)     the sinking of the vessel, increase by **8** levels.

(Nov. 2009). Congress later adopted the proposed DTVIA guideline, which became effective on November 1, 2009, months after the district court sentenced defendants. See U.S.S.G. app. C at 314–16 (Nov. 2010).

In defendants' presentence investigation report ("PSI"), the probation officer calculated their advisory guidelines range as 108 to 135 months imprisonment, using the base offense level in proposed guideline amendment § 2X7.2. The probation officer added 8 levels, pursuant to § 2X7.2(b)(1)(C), because defendants sank their vessel. She also deducted 3 levels for early acceptance of responsibility and cooperation. The probation officer acknowledged that § 2X7.2 had been submitted by the United States Sentencing Commission but had not been promulgated by Congress as of the time of sentencing.

The district court found that the border tunnel guideline is not "sufficiently analogous" to DTVIA violations. The court observed that "Section 555 deals with

18

problems associated with smuggling activities occurring on land, specifically between the border . . . because there [are] only two countries we border, Canada and Mexico." The court noted, however, that the new proposed guideline for DTVIA violations, on the other hand, is "design[ed] to address problems associated with drug smuggling at sea, especially in terms of the substantial quantities of drugs that are involved in these drug smuggling ventures."

Instead of applying either provision, the district court explained that it was "rely[ing] solely on the 3553(a) factors in imposing [a] sentence on these Defendants." The sentence the court applied corresponds to a sentence at the bottom of the guideline range that would have resulted from application of the proposed submersible vessel guideline. See U.S.S.G. § 2X7.2 (Nov. 2009).

ii.

When no offense-specific guideline has been promulgated, the district court either must apply the most analogous guideline or, "[i]f there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553 shall control . . . ." U.S.S.G. § 2X5.1. "The most analogous guideline contemplated by section 2X5.1 is the guideline that applies to the most analogous statute of conviction." United States v. Hyde, 977 F.2d 1436, 1438–39 (11th Cir. 1992). "Section 2X5.1

19

indicates that 'the most analogous offense guideline' is determined by analogy of criminal behavior . . . ." Id. at 1439.

We cannot say that the district court erred in rejecting defendants' request to apply the border tunnel guideline. Section 2X7.1 pertains to "[b]order [t]unnels and [s]ubterranean [p]assages." Every provision under § 2X7.1 expressly and solely addresses convictions under 18 U.S.C. § 555, which criminalizes the construction, finance and use of border tunnels that cross international borders between the United States and another country.[4] Because the most analogous offense guideline is determined by analogy of criminal behavior, the district court did not abuse its discretion in finding the border tunnel guideline insufficiently analogous. The *actus reus* involved in constructing, financing and using border tunnels differs materially from the criminal acts punished by the DTVIA. The DTVIA targets maritime smuggling in the broader international arena.

---

[4] **§2X7.1. Border Tunnels and Subterranean Passages**

    (a)    Base Offense Level:

        (1)    If the defendant was convicted under 18 U.S.C. § 555(c), **4** plus the offense level applicable to the underlying smuggling offense. If the resulting offense level is less than level **16**, increase to level **16**.

        (2)    **16**, if the defendant was convicted under 18 U.S.C. § 555(a); or

        (3)    **8**, if the defendant was convicted under 18 U.S.C. § 555(b).

20

Faced with "no guideline [that] expressly ha[d] been promulgated" and no

"sufficiently analogous guideline," the district court followed the sentencing

guidelines' instruction to select a sentence based on the § 3553 factors.[5] See

U.S.S.G. § 2X5.1. The § 3553 factors include, among others:

> the nature and circumstances of the offense and the history and characteristics of the defendant; [t]he need for the sentence imposed– to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence . . .; to protect the public . . .; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment; [and] [t]he need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct.

---

[5] We need not address whether the district court erred by considering, even if not applying, the proposed submersible vessel guideline. The district court clearly explained that it would have applied the same sentence based solely on the § 3553 factors. See United States v. Keene, 470 F.3d 1347, 1349 (11th Cir. 2006) ("[T]he Supreme Court and this Court have long recognized that it is not necessary to decide guidelines issues or remand cases for new sentence proceedings where the guidelines error, if any, did not affect the sentence." (quotation marks omitted)).

We also need not address Mr. Meneses's argument that the district court erred by implicitly applying an eight-level enhancement under the proposed subterranean vessel guideline, § 2X7.2(b)(1)(C), because defendants sank their vessel. The district court explained that had it applied the proposed subterranean vessel guideline, it "would have found that the enhancement for scuttling is more than appropriate under the facts as [the court] kn[e]w them." The indictment alleged that defendants' vessel sank within minutes after defendants jumped from it. Defendants never refuted this point. Because the district court calculated defendants' sentences based on an application of the § 3553 factors alone, however, we need not decide whether it would have been proper for the district court to apply the enhancement under the facts of this case. See Keene, 470 F.3d at 1349.

21

18 U.S.C. § 3553(a). The district court expressly considered the § 3553 factors. The court stated that it imposed defendants' particular sentences to send a message to deter drug cartels from using submersible vessels to smuggle drugs, to protect the public, and to provide proper punishment, especially in light of the seriousness of the offense. The district court considered the parties' arguments and gave a reasoned basis for its sentence. That is all that we require of sentencing courts. See Rita v. United States, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007). We therefore conclude that the district court committed no procedural error in selecting defendants' sentence.

iii.

Defendant Meneses argues that his 108 month sentence is substantively unreasonable. Mr. Meneses argues that the district court should have departed downward from its guideline calculation when determining his sentence because his status as an alien creates a sentencing disparity. Mr. Meneses asserts that his alienage renders him ineligible for certain vocational and other programs that could lead to early release and precludes placement in a minimum security facility or home confinement. The crux of his argument is that he received "a sentence that is greater than necessary."

In reviewing a sentence for substantive reasonableness, we examine the totality of the circumstances and determine whether the sentence achieves the sentencing goals stated in 18 U.S.C. § 3553(a). United States v. Culver, 598 F.3d 740, 753 (11th Cir. 2010); United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008). It is within the district court's discretion to weigh the § 3553(a) factors, and "[w]e will not substitute our judgment in weighing the relevant [statutory] factors." United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007) (quotation marks omitted). In a pre-Booker decision, we held that a sentencing court may not apply a downward departure to shield aliens from detrimental collateral consequences stemming from defendants' status as an alien. United States v. Maung, 320 F.3d 1305, 1308–10 (11th Cir. 2003); see also United States v. Veloza, 83 F.3d 380, 382 (11th Cir. 1996) (holding that collateral consequences of defendants' alienage could serve as basis for downward departure only if those consequences "were extraordinary in nature or degree," and affirming court's refusal to depart based on "the unavailability of preferred conditions of confinement" (quotation marks omitted)), *overruled on other grounds by* United States v. De Varon, 175 F.3d 930 (11th Cir. 1999) (en banc).[6]

---

[6] Mr. Meneses argues that our Maung and Veloza decisions are no longer binding precedent after United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). In the alternative, he argues that even if they remain binding, his case is distinguishable because he suffers greater

23

We conclude that Mr. Meneses's sentence is substantively reasonable. The district court considered Mr. Meneses's disparity argument. Defendants' sentence is well below the 15 year statutory maximum for violations of the DTVIA. See 18 U.S.C. § 2285(a). Given the severity of the offense and need for deterrence, Mr. Meneses's sentence achieves the sentencing goals stated in § 3553. We cannot say that "we are 'left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" United States v. McBride, 511 F.3d 1293, 1297–98 (11th Cir. 2007) (quoting United States v. Williams, 456 F.3d 1353, 1363 (11th Cir. 2006)). We therefore affirm Mr. Meneses's sentence.

D.

Finally, Mr. Estupinan argues that the district court erred by failing to attach a copy of its rulings on the parties' sentencing objections to his PSI. Federal Rule of Criminal Procedure 32(i)(3)(C) requires the sentencing court to "append a copy of the court's determinations [for any disputed portion of the PSI or other controverted matter] to any copy of the presentence report made available to the

---

hardships as a result of his alienage than the aliens in Maung and Veloza. We need not resolve these issues, as we conclude that Mr. Meneses's sentence is substantively reasonable in light of the district court's consideration of his disparity concerns in its application of the § 3553 factors.

24

Bureau of Prisons." We have said that failure to follow Rule 32(i)(3) is a mere "'ministerial matter' which may be remedied without resentencing by attaching a copy of the sentencing hearing transcript to the presentence report." United States v. Spears, 443 F.3d 1358, 1362 (11th Cir. 2006) (quotation marks omitted). At the sentencing hearing, Mr. Estupinan, through counsel, raised objections to the proposed guideline calculation in the PSI. The district court erred by failing to append a copy of its rulings on these objections. We therefore remand for the limited purpose of allowing the district court to attach a copy of its rulings on Mr. Estupinan's objections to his PSI.

## III. CONCLUSION

For these reasons, we AFFIRM the district court's finding that the DTVIA is a constitutional exercise of Congress's power under the High Seas Clause. We also AFFIRM defendants' sentences. We REMAND for the district court to follow the procedures outlined in Fed. R. Crim. P. 32(i)(3)(C) for appending its rulings on contested sentencing issues to the PSI.


AFFIRMED and REMANDED.