[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10183
Non-Argument Calendar
_____

D.C. Docket No. 0:16-cr-60180-DTKH-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN CARLOS FLORES-PEREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 10, 2018)

Before ROSENBAUM, HULL, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Juan Carlos Flores-Perez challenges the 210-month sentence he received after pleading guilty to conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846.  Flores-Perez maintains that the district court erred in three ways: (1) failing to apply a reduction for a mitigating role in the offense; (2) sentencing him based in part on the drug-purity-based methamphetamine guidelines; and (3) otherwise imposing a substantively unreasonable sentence.  For the reasons explained below, we reject each of these arguments and affirm his sentence.

## I.

Flores-Perez was arrested after selling over 6 kilograms of crystal methamphetamine to an undercover officer and discussing the sale of an additional 32 kilograms of the same drug.  The deal was arranged through a confidential informant, who Flores-Perez had approached and asked about buyers for a large amount of crystal methamphetamine or heroin.  The confidential informant put Flores-Perez in touch with the undercover officer, and they arranged the 6-kilogram sale, for $17,000 per kilogram.  Flores-Perez had the confidential informant drive him to South Florida to make the sale.  Before the sale, Flores-Perez sent the undercover officer a package containing a sample of the crystal methamphetamine so that the undercover officer could test its quality.

2

In the presentencing-investigation report ("PSR"), Flores-Perez was held accountable for 4.5 kilograms or more of methamphetamine with a purity level of at least 80 percent, also known as "Ice" methamphetamine, which corresponded to the highest base offense level (38) in the drug-quantity table of the 2016 Guidelines Manual. *See* U.S.S.G. § 2D1.1(c)(1); *Id.* § 2D1.1(c), Notes to Drug Quantity Table, n.(C) (defining "Ice"). He received a three-level reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. The PSR also addressed his criminal history, noting two prior arrests for transporting large quantities of drugs, including, on one occasion, 4 kilograms of methamphetamine, 2.7 kilograms of heroin, and 15 kilograms of cocaine.

The PSR recommended a total offense level of 35, which, combined with his criminal history category of III, established a recommended guideline imprisonment range of 210 to 262 months. The statutory sentencing range was 10 years to life imprisonment. 21 U.S.C. § 841(b)(1)(A)(viii). The PSR also noted that Flores-Perez was subject to removal from the United States upon completion of the term of imprisonment.

Though Flores-Perez now argues that the district court erred in failing to apply a mitigating-role reduction, he did not object to the PSR's omission of such a reduction. So the issue was never raised at sentencing, and the court adopted the PSR's guideline calculations without objection.

With the guideline range established, the district court asked the parties for their views on an appropriate sentence.  The government recommended a sentence at the low end of the guideline range.  Flores-Perez requested a downward variance, offering three main grounds.  First, he argued that a variance was warranted because the methamphetamine guidelines enhance the base offense level when the purity level is at least 80%, and the purity in this case was around 80%.  Second, he asserted that he was a relatively minor player in a larger drug organization.  Finally, he urged that, due to his age (57 at sentencing) and health issues, a sentence at the mandatory minimum of 10 years was more than sufficient to satisfy the purposes of sentencing.

Ultimately, the district court imposed a prison sentence of 210 months, concluding "that a sentence within the advisory guideline range in this case is one that really is required."  The court thoughtfully considered the 18 U.S.C. § 3553(a) factors and responded to each of the arguments advanced by Flores-Perez.

The district court found that the offense was very serious, based on both the dangerousness of methamphetamine and the quantity of drugs involved.  Regarding Flores-Perez's history and characteristics, the court noted that people are "complex" and, without minimizing the many positive things his family had to say about him, explained that Flores-Perez was no stranger to drug trafficking and that his conduct could not be attributed to addiction or economic necessity.  In

4

addition, the court stated, there was a need to deter Flores-Perez, given his history of large drug transactions, and others who might be tempted to engage in the profitable business of drug trafficking.  For these reasons, and despite Flores-Perez's "very human plea" regarding his age and health, the court believed a sentence in the guideline range was necessary.  Flores-Perez now appeals.

## II.

In reviewing a sentence, we make sure that it is both free from significant procedural error and substantively reasonable.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  Significant procedural errors include improperly calculating the guideline range and failing to consider the sentencing factors under 18 U.S.C. § 3553(a).  *Id.*  If the sentence is procedurally sound, we then consider whether it is substantively reasonable under the totality of the circumstances, giving due deference to the district court's assessment of the § 3553(a) factors.  *Id.*

Flores-Perez raises one procedural challenge and two substantive challenges. Procedurally, he says the district court erred by failing to grant him a mitigating-role reduction.  Substantively, he maintains that a downward variance from the guideline range was warranted because of (1) the unreasonable purity-based methamphetamine guidelines and (2) his immigration status, age, and other § 3553(a) factors.

5

**A.**

We begin with Flores-Perez's argument that the district court incorrectly calculated the guideline range by failing to grant a guideline reduction based on his mitigating role as a mere "facilitator" in the drug transaction. As Flores-Perez concedes, we review this argument for plain error because it was raised for the first time on appeal. *See United States v. Suarez*, 893 F.3d 1330, 1336 (11th Cir. 2018) (reviewing a newly-raised guideline-application challenge for plain error).

A defendant who has a mitigating role in an offense may receive a decrease in his offense level. *See* U.S.S.G. § 3B1.2. The guidelines direct courts to apply a two-level decrease for a "minor participant," a four-level decrease for a "minimal participant," and a three-level decrease for someone in between a minor and minimal participant. *Id.* The determination of whether to apply a mitigating-role adjustment "is heavily dependent upon the facts of the particular case," *id.*, cmt. n.3(C), and the defendant bears the burden of proving, by a preponderance of the evidence, that he is entitled to the reduction. *United States v. Rodriguez De Varon*, 175 F.3d 930, 939 (11th Cir. 1999) (*en banc*).

Here, Flores-Perez has not established plain error. When reviewing for plain error, we cannot correct an error unless the error is clear or obvious under current law. *United States v. Olano*, 507 U.S. 725, 734 (1993). Even assuming for the sake of argument that a district court can err by failing to apply a role reduction

*sua sponte*, notwithstanding that the defendant bears the burden of proof, nothing in the record makes it clear or obvious that Flores-Perez had a mitigating role in the offense under § 3B1.2.

Though Flores-Perez describes himself as a mere "facilitator" of the drug transaction, the record shows that he was the central (and apparently only) participant in the relevant conduct.[1] *See De Varon*, 175 F.3d at 941 (stating that a defendant's role must be assessed "in relation to the relevant conduct attributed to the defendant in calculating [his] base offense level"). He actively solicited a buyer for a large quantity of crystal methamphetamine, he sent samples of the drugs to verify its purity, he arranged transportation for the drugs, and he then personally conducted the sale. These facts, from making clear that Flores-Perez had a minor role, all weigh against granting a role reduction. *See id.* at 942–43. His reliance on a broader drug conspiracy is unavailing because "a defendant's role in the offense may not be determined on the basis of criminal conduct for which the defendant was not held accountable at sentencing." *Id.* at 941. Accordingly, the district court did not plainly error by failing to apply § 3B1.2 *sua sponte*.

---

[1] In fact, § 3B1.2 may not even apply here because the guideline "is not applicable unless more than one participant was involved in the offense." U.S.S.G. § 3B1.2, cmt. n.2. It does not appear that the confidential informant and undercover officer qualify as "participants" because they were not "criminally responsible for the commission of the offense." U.S.S.G. § 3B1.1, cmt. n.1. Neither Flores-Perez nor the PSR identifies any other participants in the relevant conduct, and "the district court may consider only those participants who were involved in the relevant conduct attributed to the defendant." *De Varon*, 175 F.3d at 944.

**B.**

Next, we consider Flores-Perez's arguments that the district court should have granted a downward variance.  First, he argues that the court erred by sentencing him in part based on drug purity.  Second, he says that the sentence was unreasonably harsh under the § 3553(a) factors.  Neither argument is persuasive.

We review the substantive reasonableness of a sentence under an abuse-of-discretion standard.  *Gall*, 552 U.S. at 51.  Ordinarily, "we will reverse a sentence as substantively unreasonable only if we are left with the definite and firm conviction that the [d]istrict [c]ourt committed a clear error of judgment in weighing the factors by arriving at a sentence outside the range of reasonable sentences dictated by the facts of the case."  *United States v. Alberts*, 859 F.3d 979, 985 (11th Cir. 2017) (quotation marks omitted).  The defendant bears the burden of showing that his sentence is unreasonable.  *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

The district court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes" of sentencing listed in § 3553(a)(2), including retribution, incapacitation, deterrence, and rehabilitation.  18 U.S.C. § 3553(a)(2).  In evaluating how these purposes apply in a particular case, the court must consider, among other factors, the nature and circumstances of the offense, the history and characteristics of the defendant, the applicable guideline range, and

8

the need to avoid unwarranted sentencing disparities.  *See id.* § 3553(a)(1), (4), (6).

The court may, in its discretion, weigh some factors more heavily than others.

*United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).

Flores-Perez's first argument concerns the methamphetamine guidelines,

which reflect a 10:1 sentencing disparity between pure methamphetamine and non-

pure, or "mixture," methamphetamine.  As relevant here, a base offense level of 38

is triggered either by 45 kilograms or more of mixture methamphetamine or by 4.5

kilograms of "Methamphetamine (actual)" or Ice.[2]  U.S.S.G. § 2D1.1(c)(1) (Nov.

2016).  In arguing that the district court erred by relying on the Ice guidelines,

Flores-Perez compares this disparity to the 100:1 sentencing disparity between

crack and powder cocaine that the Supreme Court addressed in *Kimbrough v.*

*United States*, 552 U.S. 85 (2007).

In *Kimbrough*, the Supreme Court upheld a district court's decision to vary

downward from the crack-cocaine guidelines based on a policy disagreement with

---

[2] The parenthetical "(actual)" means "the weight of the controlled substance, itself, contained in a mixture or substance."  U.S.S.G. § 2D1.1(c)(1), Notes to Drug Quantity Table, n.(B).  So, for example, a mixture weighing 10 grams containing methamphetamine at 80% purity contains 8 grams of methamphetamine (actual).  Where there is a mixture or substance containing methamphetamine, the offense level is the greater of either the weight of the mixture or substance or the weight of the actual methamphetamine.  *Id.*  For that reason, Flores-Perez's passing, and improperly raised, argument that the offense level was incorrectly calculated is wrong.  Even assuming the purity was just under 80%, such that the Ice guidelines did not apply, we agree with the government that, based on the purity levels reflected in Flores-Perez's own laboratory report, the amount of methamphetamine (actual) within the total amount of mixture methamphetamine was more than 4.5 kilograms.  So, a base offense level of 38 would still apply without the use of the Ice guidelines.  Accordingly, the court properly calculated the guideline range.

the crack-to-powder ratio. 552 U.S. at 110–11. Noting that the crack-cocaine guidelines "did not take account of empirical data and national experience" and "produce[d] disproportionately harsh sanctions," the Court held that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Id.* at 109–10 (quotation marks omitted).

Flores-Perez's claim that the district court erred in sentencing him pursuant to the methamphetamine Ice guidelines is unavailing. To the extent he claims that the purity disparity reflected in the methamphetamine guidelines is not supported by empirical evidence, the lack of empirical evidence does not render reliance on a guideline unreasonable.[3] Rather, it is "one factor" that a district court can consider in exercising its authority to vary from the guidelines. *See United States v. Snipes*, 611 F.3d 855, 870 (11th Cir. 2010). While *Kimbrough* "empowered" district courts with discretion to vary downward based on a policy disagreement with the applicable guidelines, it did not "command" district courts to exercise this discretion. *Dell v. United States*, 710 F.3d 1267, 1279 (11th Cir. 2013); *United*

---

[3] According to the commentary to § 2D1.1, drug purity "is probative of the defendant's role or position in the chain of distribution." U.S.S.G. § 2D1.1 cmt. n. 27(C). In particular, "[s]ince controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." *Id.*

*States v. Stratton*, 519 F.3d 1305, 1307 (11th Cir. 2008).  And nothing in the record here convinces us that the court abused its discretion by failing to vary downward based on a policy disagreement with the methamphetamine guidelines.

The district court's decision to sentence Flores-Perez to 210 months, at the low end of the advisory guideline range, was amply supported by the record and consistent with the § 3553(a) factors.  The court expressly considered the parties' arguments and the § 3553(a) factors and convincingly explained its reasons for weighing the § 3553(a) factors as it did.  The court explained that—despite Flores-Perez's age and health—the imposed sentence was necessary due to the seriousness of the offense conduct, Flores-Perez's record of trafficking large quantities of drugs, and the need for a strong sentence to deter him and other individuals.  Flores-Perez does not identify any specific error in how the court weighed the relevant § 3553(a), and we cannot simply reweigh the factors ourselves.  *See Rosales-Bruno*, 789 F.3d at 1254–55.

Other factors likewise support the reasonableness of the sentence.  We ordinarily expect a sentence within the guideline range to be reasonable, and this case is no exception.  *United States v. Croteau*, 819 F.3d 1293, 1309–10 (11th Cir. 2016) ("We do not presume that a sentence falling within the guidelines range is reasonable, but we ordinarily expect it to be so.").  Plus, "[a] sentence imposed

11

well below the statutory maximum penalty"—here, life imprisonment—"is another indicator of reasonableness." *Id.* at 1310.

As for Flores-Perez's claim that the district court failed to consider his future deportation, he has not established any error. To begin with, he never asked the court to consider this factor, so we cannot fault the court for not addressing it. Nor would the court have erred in giving this factor little or no weight. In *United States v. Maung*, 320 F.3d 1305 (11th Cir. 2003), involving binding guidelines, we noted that we were not aware of any case in which we had "upheld a downward departure based upon collateral consequences related directly or indirectly to the defendant's status as an alien." *See id.* at 1308. Further, we noted that granting a departure due to collateral consequences of immigration status "would be to favor aliens with more lenient sentences than citizens of this country who commit the same crime and have the same criminal history." *Id.* at 1309. This reasoning is no less applicable here, and Flores-Perez offers no persuasive argument in response. Accordingly, the court did not abuse its discretion by failing to account for Flores-Perez's removability upon release from confinement.

Given the substantial deference accorded sentencing courts, we cannot say that Flores-Perez's 210-month sentence, at the low end of the guideline range, was "outside the range of reasonable sentences dictated by the facts of the case." *See Alberts*, 859 F.3d at 985.

**AFFIRMED.**

13