[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10854
Non-Argument Calendar

_____

D.C. Docket No. 3:00-cr-00040-WHA-TFM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REID KELSEY BLACK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(August 7, 2012)

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Reid Kelsey Black appeals the district court's revocation of his supervised release and imposition of a 24-month prison sentence, pursuant to 18 U.S.C. § 3583(e)(3). After review, we affirm.

## I. BACKGROUND

### A.    Conviction and Sentence

In 2000, Black pled guilty to possession with intent to distribute methamphetamine (Count 1) and to brandishing a firearm (Count 2). At sentencing, the district court granted the government's motion for a downward departure based on Black's substantial assistance. As a result of the downward departure, Black received a 60-month sentence on Count 1, which represented a 91-month reduction from his guidelines range of 151 to 188 months.

As a result of the mandatory, consecutive sentence in 8 U.S.C. § 924(c)(1)(A)(ii), the district court imposed a consecutive 84-month sentence on Count 2. The district court imposed a total 144-month sentence followed by five years' supervised release. As conditions of his supervised release, Black was required, inter alia, to "work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons" and to "notify the probation officer at least ten days prior to any change in residence or employment."

2

**B.    Petition for Revocation of Supervised Release**

After serving his 144-month sentence, Black began his term of supervised release on March 17, 2011.  On January 11, 2012, Black's probation officer filed a petition alleging that Black had violated the conditions of his supervised release by: (1) failing to work regularly; and (2) failing to provide notification to the probation officer prior to changing his employment status.[1]  According to the probation officer's Supervised Release Violation Report (the "Report"), Black had held jobs with four different employers since beginning supervised release and had quit each job.  At the time the Report was filed, Black was unemployed.

**C.    Testimony at the Revocation Hearing**

At a February 2, 2012 revocation hearing, the district court found that Black's alleged Grade C violations and his criminal history category of II yielded a guidelines range of four to ten months and that the statutory maximum was five years' imprisonment.  Black pled not guilty to the above two violations.

Probation Officer John Meredith testified that Black obtained his first job at West Point Foundry, where he worked as a painter from May 23 to August 19, 2011, less than three months.  Black did not notify Meredith before he quit the West Point Foundry job, but later told Meredith he left because of insufficient pay,

---

[1]The government later dismissed a third alleged violation of failing to pay restitution.

inconvenient hours and the danger from chemical exposure.  When Meredith told Black to try to get his job back, Black said he had a second job at Autosport. Meredith urged Black to return to West Point Foundry because it was steady work and because Meredith had been informed Black was a good worker.

Against Meredith's advice, Black began working at Autosport on September 12 and then quit on September 29, 2011, less than three weeks later.  Again, Black did not notify Meredith in advance.  Black's reason for quitting was the uncertainty of pay due to working on commission.

On November 14, 2011, Black began working at Opelika Metal Fabricators. Black obtained this job through an employment agency.  Black quit on December 5, 2011, less than a month later.  Black did not tell Meredith before he quit this job.  Black told Meredith he left because he did not like the job and the wages were low.  Black told the employment agency he left because he did not like the manner in which the manager spoke to him.

On December 8, 2011, Black began work at Daewon, a car manufacturing facility, and quit on December 24, 2011, less than three weeks later.  Black did not inform Meredith before he quit this job.  Meredith found out that Black was not working through another probation officer.  Black told Meredith he quit because "he refused to work with illegal Mexicans doing slave labor in an Asian

4

sweatshop." When Meredith reminded Black that steady, lawful employment was a condition of his release, Black shouted that Meredith "better not threaten [him] about getting a job," and that the release conditions were "bullshit." Black also said that "if the government could afford to keep him locked up, then take him to jail." Meredith testified that he spoke with the employment agency through which Black gained the Daewon job and learned that Black had given them a two-week notice that he intended to quit.

On January 5, 2012, Meredith met with Black in person to discuss the violations. Meredith told Black that, rather than pursue revocation, he would try a "graduated sanctions" option that would place Black in a federal halfway house for six months. Black responded that he would not go to a halfway house. Black again stated that if the government could afford to house him, it should take him to jail. After the meeting concluded, Meredith escorted Black out of his office and into the lobby, where Black's parents waited. Meredith heard Black tell his parents that Meredith was "an asshole."

Meredith recommended that the district court revoke Black's supervised release and sentence him to serve an additional 24 months in prison with no supervised release to follow. Meredith explained that he did not believe Black was amenable to supervision due to his conduct while on supervised release and

5

his poor record with the Bureau of Prisons ("BOP").  While in BOP custody, Black was cited for, or disciplined for, threatening bodily harm, refusing to work, being absent from assignment, assault without serious injury and being insolent to a staff member.  Meredith further testified that his contact with Black had become increasingly confrontational.  Black's mother told Meredith that Black had no respect for law enforcement or any authority figure.  Meredith recommended a 24-month sentence because of Black's refusal to be placed in a halfway house, which demonstrated he was not amenable to supervision and because Black received a downward departure at sentencing.

Dennis Anglin, Black's supervisor at Daewon, testified that Black worked on a production machine, which required standing, bending and lifting and that Black was a good employee.  Black gave notice that he would be leaving the job due to lower back problems.

Black's mother, Murriel Black, testified that she and her husband were in poor health and that Black helped them around their farm.  Mrs. Black also confirmed that Black has a back problem and explained that Black used a tractor to lift things when working on their farm.

Black testified that he was a trained and certified automotive collision repair specialist.  Black applied to all the body shops in his area, but could not obtain a

6

position with any of them.  Black was promoted to supervisor while at West Point Foundry, but left because of environmental dangers, including chemical exposure, that higher management refused to address.  Black called to tell Meredith he was leaving West Point Foundry, but Meredith never called him back.

Black said he worked at Autosport as a subcontractor and left because they would not offer him a full-time position, which his supervised release required. Black then worked for Opelika Manufacturing.  Black reported to the employment agency that he was being exposed to chemicals there, and the agency told him not to go back.  Three days later, Black began working at Daewon, but quit because the work was too physically demanding for his back problems.  Black was diagnosed by BOP doctors with degenerative disc disease and two bulging and misaligned vertebrae.  Black said that he had received an offer to begin working at a collision center on February 6, 2012, four days after the revocation hearing.

Black said that Meredith's instructions to return to his job at Daewon frustrated him because he felt that Meredith would be happy only if Black worked at a job that caused him physical pain.  Black explained that he becomes frustrated when someone is condescending and difficult "because they feel like they're in a position where they can impose their will and they don't have to give."  Black felt that Meredith did not want Black to better himself or rebuild his life financially

7

and just wanted Black to get a temporary job. Black admitted that he has "some anger issues sometimes" and that he was combative with Meredith at the January 5 meeting because he felt Meredith was ignoring Black's best interests and trying to hold Black down. When Black was asked whether he would do something Meredith told him to do even though Black did not want to do it, Black responded, "I'm going to do the right thing. I'm going to -- I mean if he's being unreasonable how can I? But I mean I -- I try to do everything that I'm expected to do."

## D.    District Court's Ruling

The district court found Black guilty of both violations and revoked his supervised release. The district court further found that: (1) Black quit four jobs; (2) the time between each of the jobs did not constitute engagement in a lawful occupation; (3) Black did not notify Meredith before quitting any of the four jobs; (3) Meredith excused Black for not notifying him before quitting the first three jobs; (4) although Meredith warned Black that he needed to advise his probation officer, Black left his fourth job at Daewon without notifying Meredith ten days before the change; and (5) Meredith "had to find out about it from another source after [Black] had already quit." The district court rejected Black's contention that he complied with his condition to notify Meredith by notifying the employment agency.

8

With respect to the sentence, Black asked for a term of four months of home confinement, where he paid for the confinement and attended anger management classes. The government requested a 24-month sentence.

The district court stated that Black had proven that he was unwilling to be supervised and observed that Black's violations were not technical or inadvertent, but intentional violations of conditions imposed by the court and that Black "felt that [he was] the one to decide what was reasonable and what [he] should do and what [he] shouldn't do, not the probation officer." The district court stated to Black:

> The Court didn't impose on you conditions that you could decide on and come in after you had been charged with violations and after blowing up at your probation officer at least twice and then make suggestions of other things that you could do. The Court ordered you to do that while you were on supervised release. You flagrantly disobeyed that.
> One of the things that the Court has to look at is how what happens to you affects other people who are on supervised release. And if other people can act as you did in this case, come out from under it with simply going home and getting a job and going on about it, it destroys the whole authority of supervised release.

The district court noted that, although the advisory range was four to ten months, the sentence could be increased because Black had received a downward departure at his original sentencing. The district court said it was satisfied the probation office had "done the best they could with [Black] and [could not] do any more."

9

The district court stated it had considered the factors in 18 U.S.C. § 3553, "particularly the necessity to promote respect for the conditions of supervision ordered by the Court, to reflect the seriousness of the defendant's conduct, and to provide just punishment, to set an example for others." The district court imposed a 24-month sentence, without further supervised release. Black appealed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

A district court may revoke a defendant's term of supervised release if the court finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3); U.S.S.G. § 7B1.3(a)(2) (providing that district court may revoke supervised release if court finds defendant committed a Grade C violation); see also United States v. Trainor, 376 F.3d 1325, 1331 (11th Cir. 2004). We review for abuse of discretion a district court's finding that a defendant violated a term of supervised release. United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994). Furthermore, we are bound by the district court's findings of fact unless they are clearly erroneous. United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993).

Here the district court did not abuse its discretion in finding by a preponderance of the evidence that Black had violated the conditions of his

10

supervised release.  Probation Officer Meredith testified that he repeatedly warned Black that he needed to maintain employment as a condition of his supervised release.  Nonetheless, during almost eight months of supervision (May 23, 2011 to January 11, 2012), Black quit four jobs and worked a total of only about 20 weeks.  Moreover, Black repeatedly quit jobs without giving Meredith the required ten days' advance notice, even though Black was able to give two weeks' notice to his employment agency.  At the revocation hearing, Black admitted that he was unemployed for periods of up to six weeks and that he did not try to notify Meredith before quitting three of his four jobs.

This evidence is sufficient to support a finding by a preponderance of the evidence that Black failed to work regularly unless excused by his probation officer and failed to notify his probation officer ten days before changing his employment.  Further, the district court's fact finding that Black's violations were intentional, rather than inadvertent, is not clearly erroneous.  Accordingly, the district court did not abuse its discretion when it revoked Black's supervised release.

**B.    Reasonableness of Sentence**

Black contends his 24-month sentence is substantively unreasonable.  If the district court finds that the defendant violated a condition of supervised release,

11

the court may revoke the term of supervised release and impose a prison term after considering certain factors set forth in 18 U.S.C. § 3553(a).  See 18 U.S.C. § 3583(e)(3).[2]  The district court must also consider the policy statements in Chapter 7 of the Sentencing Guidelines, one of which, U.S.S.G. § 7B1.4, provides recommended, non-binding ranges of imprisonment.  United States v. Silva, 443 F.3d 795, 799 (11th Cir. 2006); U.S.S.G. § 7B1.4.  In addition, the commentary to U.S.S.G. § 7B1.4 states that "an upward departure may be warranted" if the defendant's "original sentence was the result of a downward departure (e.g., as a reward for substantial assistance)."  U.S.S.G. § 7B1.4, cmt. n.4.

Here, the parties do not dispute that, with a Grade C violation and a criminal history category of II, Black's recommended guidelines range under advisory Chapter 7 was four to ten months' imprisonment.  See U.S.S.G. § 7B1.4(a).  Because Black was on supervised release for a Class A felony, the statutory maximum sentence upon revocation was five years.  See 18 U.S.C. § 3583(e)(3).[3]

---

[2]Specifically, in a revocation proceeding, the relevant factors the district court must consider are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence, protect the public and provide the defendant with needed educational or vocational training or medical care; (3) the Sentencing Guidelines range and pertinent policy statements of the Sentencing Commission; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution.  See 18 U.S.C. § 3583(e) (cross-referencing 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7)).

[3]Black does not argue that the district court committed any procedural error at the revocation hearing.

12

We review a sentence imposed upon revocation of supervised release for reasonableness.  United States v. Sweeting, 437 F.3d 1105, 1106-07 (11th Cir. 2006).  Our reasonableness review applies the deferential abuse of discretion standard.  Gall v. United States, 552 U.S. 38, 41, 46, 128 S. Ct. 586, 591, 594 (2007).  The party challenging the sentence has the burden to show it is unreasonable in light of the record and the § 3553(a) factors.  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).  If the district court decides to impose an upward variance, "it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) (quoting Gall, 552 U.S. at 50, 128 S. Ct. at 597).  However, we will vacate such a sentence "only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir. 2009) (internal quotation marks omitted).

Black has not shown that his 24-month sentence was substantively unreasonable.  The district court found that Black's violations were intentional and flagrant and constituted a refusal to accept the authority of the court and the

13

probation officer. As such, the district court believed that Black was not willing to be supervised. This view is supported by the evidence. When Meredith met with Black to discuss Black's repeated failures to comply with his supervised release conditions, Black was argumentative with Meredith and dismissive of the court's conditions of supervised release. Black also rejected Meredith's proposed "graduated sanction" of six months in a halfway house, essentially daring the government to re-imprison him if it could afford it. Then, at his revocation hearing, Black admitted he would be unable to follow his probation officer's instructions if Black deemed those instructions unreasonable.

In varying upward, the district court cited the need to promote respect for the conditions of supervised release imposed by the court and to deter others. The district court also emphasized that a sentence above the advisory range was warranted given that Black had received a significant downward departure at his original sentencing. Contrary to Black's assertion, the district court's explanation for the variance is sufficiently compelling to justify the 14-month variance. As the district court explained, Black's violations were not merely "technical" because they were willful and thus tended to undermine the system of supervised release. Moreover, although Black's 24-month sentence was above the recommended range, it was well below the five-year statutory maximum. See United States v.

14

Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).

Black also argues that the district court's 24-month sentence created an unwarranted disparity with other defendants in two other cases. However, the cases Black cites are not published and are not binding precedent. See 11th Cir. R. 36-2. In any event, to be unwarranted, a disparity must be between similarly situated defendants with similar records. See United States v. Spoerke, 568 F.3d 1236, 1252 (11th Cir. 2009). Black has not shown that the defendant in either case he cites was similarly situated. The only similarities to Black are that both defendants committed Grade C violations and had a criminal history category of II, which resulted in an advisory guidelines range of 4 to 10 months, and both defendants received sentences above that range. Beyond that, the nature of the defendants' Grade C violations and the circumstances surrounding them were different. Additionally, the cases Black cites do not require a finding of unreasonableness here. Rather, they merely demonstrate the broad range of discretion a district court has in imposing a reasonable sentence.

Finally, Black points out that he did not commit any new crimes or test positive for illegal drugs, that he constantly sought work, and that he was a good worker and helped his elderly parents. The district court considered these mitigating facts at the revocation hearing and concluded that they were

15

outweighed by the willfulness of Black's violations and his unwillingness to be supervised.  In short, Black asks us to substitute our judgment for the district court's and to reweigh the factors on appeal, which is something we do not do. See United States v. Saac, 632 F.3d 1203, 1214-15 (11th Cir.), cert. denied, 132 S. Ct. 139 (2011).

Under the totality of the circumstances, we cannot say the district court's decision to vary upward and impose a 24-month sentence was an abuse of discretion.

**AFFIRMED.**