[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  13-13319
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-00230-JEC-GGB-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KRISTEN NOELL GODUTO,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____
(June 12, 2014)

Before HULL, MARCUS, and JORDAN, Circuit Judges.

PER CURIAM:

Kristen Goduto appeals a 168-month sentence imposed after her guilty plea

to violating 21 U.S.C. §  846 by conspiring to possess a controlled substance with

intent to distribute (here, oxycodone, a Schedule II controlled substance,

distribution of which is proscribed under 21 U.S.C. § 841(b)(1)(C)).  Ms. Goduto contends that her sentence is procedurally unreasonable because the district court erred by (1) applying a two-level increase for her use of unusually vulnerable individuals in the course of her criminal conduct, pursuant to U.S.S.G. § 2D1.1(b)(14)(B)(iv); and (2) departing downward only one criminal history category level.   Additionally, Ms. Goduto contends that her sentence is substantively unreasonable because (1) the district court failed to find that the conversion ratio of oxycodone to marijuana in the Drug Equivalency Table of the Sentencing Guidelines is not based on empirical data or rational experience; and (2) her sentence was greater than necessary to meet the goals of 18 U.S.C. § 3553(a) and also created an unwarranted sentencing disparity with her co-conspirators.

After a thorough review of the record and consideration of the parties' briefs on appeal, we affirm Ms. Goduto's sentence.

## I

We generally review both the procedural and substantive reasonableness of a sentence under an abuse of discretion standard.  *See United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008); *United States v. Ellisor*, 522 F.3d 1255, 1277 n.25 (11th Cir. 2008).   The party challenging the sentence has the burden of

establishing that the sentence was unreasonable. *See United States v. Saac*, 632 F.3d 1203, 1212 (11th Cir. 2011).

We review the interpretation and application of the guidelines *de novo* and findings of fact for clear error. *See United States v. Bane*, 720 F.3d 818, 824 (11th Cir. 2013). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Robertson,* 493 F.3d 1322, 1330 (11th Cir. 2007) (internal quotation marks omitted). At a minimum, there must be substantial evidence to support a factual finding. *Id.* "The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing." *United States v. Polar,* 369 F.3d 1248, 1255 (11th Cir. 2004).

## II

The Sentencing Guidelines, in § 2D1.1, provide for a two-level enhancement for a defendant who, having also received an aggravating-role enhancement under § 3B1.1, and "knowing that an individual was unusually vulnerable due to physical or mental condition or otherwise particularly susceptible to the criminal conduct, distributed a controlled substance to that individual or involved that individual in the offense." U.S.S.G. § 2D1.1(b)(14)(iv). Although Ms. Goduto does not dispute

3

the propriety of her role enhancement under § 3B1.1, she argues that the district court erred in applying the § 2D1.1 enhancement.

The district court interpreted the phrase "unusually vulnerable" to include individuals suffering from chemical addiction. *See* § 2D1.1(b)(14)(B). Ms. Goduto does not challenge this interpretation, but instead argues that the enhancement requires a factual showing of force or intimidation. *See* Appellant's Initial Brief at 48 ("Not one [person] testified that they were forced or browbeat into participating. While many of the co-defendants had a drug problem, that was their problem; Ms. Goduto did not make anyone take drugs."). We are not persuaded. The text of § 2D1.1(b)(14)(B) does not mention force or intimidation.

The district court fairly found that Ms. Goduto exploited the drug addictions of several individuals to tempt them into her conspiracy. One such vulnerable person, co-defendant Georgia Hulsey, suffered from an oxycodone addiction and attempted to expose, and thereby free herself from, Ms. Goduto's conspiracy by anonymously warning physicians that false prescriptions were being passed in their names. *See* D.E. 470 at 73-74. Even with this heightened risk of being caught, Ms. Hulsey continued in the conspiracy because Ms. Goduto would pay her in oxycodone pills. *Id*. Another co-defendant, Phillip Hobbs, was clinically depressed, addicted to methamphetamine, and homeless. *Id*. at 287-93. Ms. Goduto provided him methamphetamine in exchange for his role as a "runner" in

4

the conspiracy, i.e., for delivering forged prescription notes to and collecting oxycodone medications from pharmacies. *Id*. at 292. Finally, Ms. Goduto induced Lori Anderson, yet another co-defendant, to falsely verify prescriptions by threatening to inform her family of her methamphetamine addiction if she did not participate. *Id*. at 38-41. In each case, Ms. Goduto was well aware of her co-defendant's addictions and exploited that vulnerability to further her criminal conspiracy. As the district court noted, Ms. Goduto "had a slew of folks here with real serious drug problems, some mental problems, and utilized those people, sent them out to do her bidding, gave her some deniability and they were the ones that were exposed at the pharmacy." D.E. 469 at 331.

In sum, the district court did not err, legally or factually, in imposing an enhancement under § 2D1.1(b)(14)(iv).

### III

The district court departed one level in Ms. Goduto's criminal history category, down to criminal history category II. Ms. Goduto, however, had requested a two-level departure to criminal history category I. Ms. Goduto argues that the district court procedurally erred in failing to grant her this two-level departure.

A district court's decision to depart from the Guidelines is reviewed for an abuse of discretion. *See United States v. Kimball*, 291 F.3d 726, 733 (11th Cir.

5

2002).  A departure under U.S.S.G. § 4A1.3 generally requires that "the district court must discuss each criminal history category it passes over en route to the category that adequately reflects the defendant's past criminal conduct."  *United States v. Gibson*, 434 F.3d 1234, 1252 (11th Cir. 2006).  *See also United States v. Johnson*, 934 F.2d 1237, 1240 n.7 (11th Cir. 1991) ("The district court must share its findings with the defendant on the record [pursuant to a departure under §4A1.3].").

The district court did not specify the rationale by which it departed just one criminal history category.  The court did, however, indicate that this departure was based on its agreement with the government's suggestion that only a one-level departure be granted.  *See* D.E. 469 at 11.  *See also* D.E. 424 at 30.[1]  The district court also noted that Ms. Goduto's criminal record was small, D.E. 469 at 17, and the record established that Ms. Goduto's only previous crime was a misdemeanor. Nevertheless, the fact that Ms. Goduto was, at the time of her arrest, still on probation for the previous drug-related misdemeanor clearly militated against a further criminal history departure.

**IV**

---

[1] The government's sentencing memorandum noted that Ms. Goduto's "criminal history points are somewhat duplicative; that is, she gets an extra criminal history point because of the sentence she received for her probation violation and then two additional points for committing the offense while on probation."  D.E. 424 at 29-30.

Next, Ms. Goduto claims that the district court erred by failing to disavow the conversion ratio of oxycodone to marijuana set forth in the Sentencing Guidelines.[2]  According to Ms. Goduto, the Sentencing Commission's failure to base this conversion ratio on empirical data or rational experience rendered it inappropriate.  The district court, however, provided sufficient explanation for rejecting Ms. Goduto's contentions.  Moreover, the record does not support Ms. Goduto's claim that the district court failed to appreciate its authority to reject the conversion ratio.

A sentencing court is free to vary from a guideline sentence on the basis of the § 3553(a) factors when the applicable guideline is not grounded in empirical data.  *See Kimbrough*, 552 U.S. at 108-10 (approving of variances from the crack cocaine guidelines because the Sentencing Commission did not take account of empirical data).  The absence of empirical data alone, however, does not compel the invalidation of a guideline, but is rather simply one factor that may be considered in support of a variance.  *See United States v. Snipes*, 611 F.3d 855, 870 (11th Cir. 2010).  For example, we have stated that *Kimbrough* "empowered" the district courts with the discretion to vary based on their disagreement with the Guideline's crack/powder cocaine disparity, but "did not command them to

---

[2] The Sentencing Guidelines provides a drug equivalency table for use in determining the base offense level for certain controlled substances.  *See* U.S.S.G. § 2D1.1, comment.  That table equates 1 gram of heroin to 1 kilogram of marijuana; 1 gram of morphine to 500 grams of marijuana; and 1 gram of oxycodone to 6,700 grams of marijuana.  *Id*.

exercise" this discretion.  *Dell v. United States*, 710 F.3d 1267, 1279 (11th Cir. 2013).

Although the district court expressed "some concerns" about the oxycodone conversion ratio, it was not swayed by Ms. Goduto's argument to completely disregard that ratio.  *See* D.E. 469 at 11-12.  The court noted that it was appropriate for the Sentencing Commission to consider other factors, not discussed by Ms. Goduto's expert witness, such as the actual, current risks of oxycodone to society. *Id*. at 12-13.  The court also noted that the Commission's efforts in revising the conversion ratio provided a more equitable treatment among oxycodone offenses – by looking to the actual weight of oxycodone in a pill rather than the gross weight of the pill itself.  *Id.* at 13.  Finally, the court recognized that oxycodone carries distinct risks, unlike heroin, due to its legitimate medical use and accessibility, which breed a sense of false security.  *Id*.

In sum, the district court had the authority to vary downward based on a policy disagreement with the Sentencing Guidelines, but it was not required to do so.  The court thoroughly considered Ms. Goduto's objections to the oxycodone conversion ratio, addressed her arguments according to the appropriate standard of review, and pursuant to thoughtful consideration of all her objections, granted a

three-level variance – to a range of 168 to 210 months – because it believed a guideline range of approximately 20 years was "excessive." *See id.* at 16.[3]

## V

Finally, Ms. Goduto claims that her sentence was substantively unreasonable because it was excessive (i) in light of the underlying purposes of sentencing, and (ii) in comparison with the sentences handed to her co-defendants, several of whom had more extensive criminal histories than she did.

A sentence is substantively unreasonable "if it does not achieve the purposes of sentencing stated in § 3553(a)." *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008) (internal quotation marks omitted). A district court must look to the totality of the circumstances to determine whether the §3553(a) factors support a given sentence. *See United States v. Gonzales*, 550 F.3d 1319, 1324 (11th Cir. 2008). Moreover, a district court must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A defendant, however, fails to show unwarranted sentencing disparities if she is unable to identify similarly situated

---

[3] To the extent Ms. Goduto argues that the district court erred by not "departing" from the Sentencing Guidelines, *see* Appellant's Initial Brief at 39, we find such an argument unavailing. Ms. Goduto did not ask for a departure; she asked for a variance because the oxycodone ratio was excessive and not empirically based. *See* D.E. 468 at 62:13-16 (counsel for Ms. Goduto noting that the district court "has the ability to say this is not empirically based or experientially based and therefore you have the right and ability to vary from the guideline range.").

defendants who received substantially different sentences.  *See United States v. Spoerke*, 568 F.3d 1236, 1252 (11th Cir. 2009).

Ms. Goduto's sentence – which was 67 months below the advisory guideline range – was not substantively unreasonable because the district court, at sentencing, discussed the § 3553(a) factors and considered her arguments in mitigation.  *See* D.E. 469 at 17.  In Ms. Goduto's favor, the court noted that she had a difficult family situation, did not have a significant criminal history, and had demonstrated acceptance of responsibility.  *See id.* at 16-17.  However, the court also noted the highly organized nature of the scheme, Ms. Goduto's arrogance and lack of remorse during the course of the conspiracy, the effect of Ms. Goduto's conduct on the community, and Ms. Goduto's recruitment of vulnerable individuals.  *See id.* at 17-18.

In short, the district court did not err in sentencing Ms. Goduto to a term of 168 months.  And because Ms. Goduto has failed to show that any of her co-defendants were as intimately involved in every aspect of the conspiracy as she was, she has not shown that her sentence created an unwarranted sentencing disparity.

## VI

For the foregoing reasons, we affirm Ms. Goduto's sentence.

**AFFIRMED.**