[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11182

_____

D.C. Docket Nos. 1:17-cv-23920-JAL; 1:00-cr-00584-JAL-10


JOSE CARLOS GONZALEZ,

                                                      Petitioner-Appellee,

                              versus

UNITED STATES OF AMERICA,

                                                      Respondent-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 20, 2020)

Before WILLIAM PRYOR, Chief Judge, HULL and MARCUS, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal turns on the timeliness of a petition for a writ of error coram

nobis. Jose Carlos Gonzalez faces mandatory removal from the United States

because he pleaded guilty to attempted alien smuggling in 2002. In February 2016,

the government started a proceeding to remove Gonzalez from the United States, but in October 2017, Gonzalez filed a petition to vacate his conviction. He alleged that he received bad legal advice about the effect of his guilty plea on his immigration status. The district court denied Gonzalez's petition as untimely because he failed to provide sound reasons for not seeking relief earlier. We affirm.

## I. BACKGROUND

Gonzalez is a Cuban national who entered the United States in 1993 and obtained permanent residency in 1998. In 2000, a federal grand jury charged Gonzalez with attempting and conspiring to bring aliens into the United States for profit. 8 U.S.C. § 1324(a)(2)(B)(ii); 18 U.S.C. §§ 2, 371. The government later filed a second superseding information charging Gonzalez only with attempted alien smuggling. 8 U.S.C. § 1324(a)(2)(A); 18 U.S.C. § 2. Attempted alien smuggling is a misdemeanor. *Compare* 18 U.S.C. § 3559(a)(6) *with* 8 U.S.C. § 1324(a)(2)(A).

On August 27, 2002, Gonzalez pleaded guilty. During the change-of-plea hearing, the district court discussed with Gonzalez and his attorney whether Gonzalez understood the implications of his guilty plea for his immigration status. Gonzalez's criminal defense attorney, Allen Kaufman, told the district court that the possibility of immigration consequences was a "sticking point" for Gonzalez, but that Gonzalez had consulted with an immigration attorney. That attorney was

2

Ana Jhones. Kaufman also told the district court at the plea hearing that he had represented to Gonzalez that the guilty plea would not affect his immigration status because the charged offense was not for-profit alien smuggling.

The district court informed Gonzalez that immigration authorities might decide to commence removal proceedings against him based on his plea. The district court stated that it did not know whether immigration authorities would institute removal proceedings against Gonzalez nor what the outcome of those proceedings would be. But the district court wanted Gonzalez to be aware that his plea might subject him to removal. Gonzalez confirmed that he understood and pleaded guilty. That November, the district court sentenced Gonzalez to one year of probation and 100 hours of community service.

Gonzalez's legal residency expired in 2015. He applied for citizenship, and immigration officials reviewed his case.

On February 24, 2016, the Department of Homeland Security served Gonzalez a notice to appear on a charge of removal that, after being admitted to the United States, he was convicted of an aggravated felony under the Immigration and Nationality Act. 8 U.S.C. § 1227(a)(2)(A)(iii). Although attempted alien smuggling is a misdemeanor, it satisfies the statutory definition of "aggravated felony," with limited exceptions that do not apply here. 8 U.S.C. § 1101(a)(43)(N);

3

*see Biskupski v. Att'y Gen. of the United States*, 503 F.3d 274, 277–81 (3d Cir. 2007).

About a week after receiving the notice to appear, Gonzalez consulted Eduardo Soto, an immigration lawyer. Soto explained to him that any advice he received that his alien-smuggling conviction would not subject him to removal was wrong. Gonzalez retained Soto's firm on March 23, 2016, and the firm assigned Alanna McCoy as his attorney. Gonzalez later received a notice of an initial hearing before an immigration judge on October 19, 2016. At that hearing, the government submitted documentary evidence of Gonzalez's conviction to satisfy its burden of proving his removability. Gonzalez's attorneys began to research possible avenues of relief.

McCoy would later testify that "at the back of everyone's mind" was the notion that if there were no options for relief in the immigration proceeding, Gonzalez could "take a deportation order . . . and essentially not be in any danger of being deported." This fallback option was available because a deportation order "wasn't a big deal" then for Cubans, and even with an order, "he would be perfectly fine." That attitude changed the following January. On January 12, 2017, the United States and Cuba announced that the United States would end its policy of not removing Cuban nationals and that Cuba would accept Cubans with deportation orders from the United States.

4

In March 2017, McCoy consulted criminal defense attorney Jeffrey Feiler about filing a motion to vacate on Gonzalez's behalf. Then, on June 23, 2017, the Supreme Court decided *Jae Lee v. United States*, 137 S. Ct. 1958 (2017), which confirmed for Gonzalez's counsel that a vacatur of their client's conviction would provide the best chance for him to stay in the United States as a permanent resident. In *Jae Lee*, the Court held that a convict may prove prejudice for an ineffective-assistance claim based on counsel's erroneous advice about removal consequences if he establishes a reasonable probability that he would not have pleaded guilty had he known it would lead to mandatory removal. 137 S. Ct. at 1962, 1969.

Gonzalez's next immigration hearing was scheduled for August 30, 2017, so he hired Feiler that month. Feiler provided McCoy with an opinion letter to request additional time from the immigration judge based on the view that Gonzalez had a strong chance of being able to vacate his conviction. The immigration judge granted Gonzalez a continuance.

Gonzalez filed a petition for a writ of error coram nobis on October 25, 2017. He sought to vacate his alien-smuggling conviction on the ground that he received ineffective assistance of counsel when deciding to plead guilty. The government opposed the petition as untimely and unmeritorious, and it asserted

5

laches. A magistrate judge held a two-day evidentiary hearing in which Gonzalez and three attorneys—McCoy, Kaufman, and Jhones—testified.

McCoy testified about the events transpiring between February 2016 and October 2017, and Kaufman testified about the circumstances surrounding Gonzalez's guilty plea in 2002. Kaufman's memory was hazy, but he testified that he would not have advised Gonzalez to plead guilty unless he was certain that Gonzalez would not face any consequences to his immigration status. He also described the prosecution's offer to reduce the felony charges against Gonzalez to a misdemeanor as a "great plea offer" that was "extremely rare" in federal court. Kaufman believed that he referred Gonzalez to Jhones for advice on the immigration question.

Gonzalez testified that he consulted with Jhones, and that she told him either that there was a "good possibility" or that it was certain that his guilty plea would not affect his immigration status. According to Gonzalez, while he was in her office, Jhones called Kaufman over the phone to explain her assessment to him directly. Jhones did not recall meeting Gonzalez and had no record of his having retained her, but she left open the possibility that he may have seen her for a consultation. She testified that if she had been brought a proposed alien-smuggling plea offer, she would have said that pleading guilty to alien smuggling subjected

6

the person to removal, but that in every consultation with Cubans then, she would have explained that "in all probability" the person would not be removed.

The magistrate judge found that Gonzalez had consulted with Jhones, and he concluded that Gonzalez received ineffective assistance of counsel and was prejudiced by it. The magistrate judge acknowledged that a coram nobis petitioner bears the burden of providing valid reasons for not having sought relief earlier, in contrast to a laches defense, for which the party asserting the defense bears the initial burden of proving prejudice as a result of the delay. But instead of concluding that Gonzalez had satisfied his burden, after a brief discussion of Gonzalez's reasons for delay, the magistrate judge turned to the analysis of laches and determined that the government failed to prove prejudice. He recommended granting Gonzalez's petition. The government objected on the grounds that Gonzalez failed to establish sound reasons for failing to seek relief earlier and failed to prove prejudice from the ineffective assistance of counsel.

The district court rejected the report and recommendation. Because the timeliness issue was dispositive, the district court did not reach any other issue. The district court found that Gonzalez "was aware of the deportation consequences of his guilty plea *at the latest* when [the Department of Homeland Security] served him with a Notice to Appear in removal proceedings on February 24, 2016," yet he "filed the instant Petition over *twenty months* later on October 25, 2017." It

7

explained that the magistrate judge "did not make any findings as to whether [Gonzalez] established sound reasons for the delay," and instead mistakenly "applied the laches standard." And it rejected Gonzalez's argument that his 20-month delay was justifiably explained by his lack of sophistication and lack of awareness of the coram nobis remedy until he retained Feiler. The district court denied Gonzalez's petition.

## II. STANDARDS OF REVIEW

We review for abuse of discretion the treatment of a magistrate judge's report and recommendation, *Stephens v. Tolbert*, 471 F.3d 1173, 1175 (11th Cir. 2006), and a denial of a petition for a writ of error coram nobis, *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000). An error of law is an abuse of discretion. *Id.* And a district court abuses its discretion if it makes a finding of fact that is clearly erroneous. *Diveroli v. United States*, 803 F.3d 1258, 1262 (11th Cir. 2015). "For a factual finding to be clearly erroneous, this Court, after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed." *United States v. Matchett*, 802 F.3d 1185, 1191 (11th Cir. 2015) (alteration adopted) (internal quotation marks omitted).

We have not previously decided, in an appeal of a denial of a petition for a writ of error coram nobis, the standard of review for a subsidiary finding of undue delay. This issue requires inquiry into "the circumstances surrounding the

8

petitioner's failure to raise the issue earlier," *Foont v. United States*, 93 F.3d 76, 80 (2d Cir. 1996), and is similar to the inquiry about whether a federal prisoner who moves to vacate his sentence, 28 U.S.C. § 2255, could have discovered earlier, through the exercise of due diligence, the facts supporting his motion, *see Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002). We review that finding for clear error, *id.*, as we ordinarily would other factual issues of timeliness, *see Drew v. Dep't of Corr.*, 297 F.3d 1278, 1287 & n.2 (11th Cir. 2002) (explaining that in various contexts we treat a finding regarding diligence as a finding of fact subject to clear error review), *overruled on other grounds as recognized by Jones v. Sec'y, Fla. Dep't of Corr.*, 906 F.3d 1339, 1351 (11th Cir. 2018); *see also United States v. Villarreal*, 613 F.3d 1344, 1351 n.4 (11th Cir. 2010) (explaining that a finding regarding the government's proffered reason for delay where the defendant asserts a violation of his speedy-trial rights is a finding of fact, which we "review for clear error" or "with considerable deference") (internal quotation marks omitted). So we will treat this determination of a petitioner's reasons for delay too as a finding of fact and review it for clear error.

## III. DISCUSSION

The writ of error coram nobis is "an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice." *United States v. Mills*, 221 F.3d 1201, 1203 (11th Cir. 2000). Because "the results

9

of [a] conviction may persist," the writ makes relief available to a petitioner who has served his sentence and is no longer in custody. *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002) (internal quotation marks omitted). To obtain coram nobis relief, a petitioner must "present[] sound reasons for failing to seek relief earlier." *Mills*, 221 F.3d at 1204. Further, "the writ may issue only when the error involves a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." *Alikhani*, 200 F.3d at 734 (internal quotation marks omitted). We have assumed but not decided that ineffective assistance of counsel may constitute an error so "fundamental" as to warrant coram nobis relief. *Moody v. United States*, 874 F.2d 1575, 1577 n.3 (11th Cir. 1989). Because Gonzalez's petition is untimely, we need not resolve that issue now.

We divide our discussion in two parts. We first address Gonzalez's challenge to the rejection of the magistrate judge's report and recommendation. Then, we address whether Gonzalez failed to provide sound reasons for his delay.

### A.  *The District Court Did Not Abuse its Discretion by Rejecting the Magistrate Judge's Report and Recommendation.*

Gonzalez argues that the district court abused its discretion by rejecting the magistrate judge's report and recommendation. Under the Federal Magistrates Act, a district judge may designate a magistrate judge to conduct hearings and to submit proposed findings of fact and recommendations for the disposition of motions,

with certain exceptions. 28 U.S.C. § 636(b)(1)(B). But the district judge retains "ultimate adjudicatory power over dispositive motions" and the "widest discretion" over how to treat a report and recommendation of a magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) (internal quotation marks omitted). The district judge must review *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

The district court did not abuse its discretion. After the government objected to the report and recommendation on the ground that Gonzalez's petition was untimely, the district court reviewed that issue *de novo*. Section 636 gives no presumptive weight to a magistrate judge's recommendation. *Mathews v. Weber*, 423 U.S. 261, 271 (1976). The district court was free to disregard the magistrate judge's conclusion. Moreover, the district court was undoubtedly correct that the magistrate judge did not actually decide whether Gonzalez had satisfied his burden of proving that his reasons for delay were sound; the magistrate judge instead skipped resolving that issue and conducted a laches inquiry.

**B. The District Court Did Not Err in Ruling that Gonzalez Failed to Provide Sound Reasons for His Delay.**

Gonzalez argues that the district court erred when it calculated his delay from the time he learned of possible deportation consequences to file his petition—for a total of 20 months—because his petition was not ripe until October 2016

11

when removal proceedings officially commenced against him. He contends that a petitioner cannot seek coram nobis relief unless he establishes that he continues to suffer legal consequences from his conviction and that until October 2016, it was unclear whether removal proceedings would actually commence against him, so he "could not have shown that he suffered any concrete injury" until then. Gonzalez likely forfeited this argument because he did not clearly raise it below, *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004), but it is meritless in any event.

The risk of removal is an adverse consequence of conviction sufficient to create an actual or imminent injury for a case or controversy under Article III. *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012); *see also Fiswick v. United States*, 329 U.S. 211, 220–22 (1946). Gonzalez began suffering that injury as soon as his aggravated-felony conviction became final. His underlying claim—that alleged ineffective assistance of counsel led him to plead guilty, which subjected him to removal—has been justiciable since 2002. There was no need for removal proceedings against Gonzalez to begin or even for immigration officials to serve him with a notice to appear to make his risk of removal a real and concrete injury. The case-or-controversy requirement posed no barrier of justiciability to Gonzalez filing a coram nobis petition in February 2016, and the district court committed no error in calculating his delay from that date at the latest.

12

Whether he delayed for 20 months or 15 years, Gonzalez lacks sound reasons for his delay. "A defendant seeking to avoid the collateral consequences of a conviction cannot postpone seeking relief until it appears that a collateral consequence is imminent." *Ragbir v. United States*, 950 F.3d 54, 63 (3d Cir. 2020). Gonzalez waited not only until the possibility of immigration consequences became imminent, but for another 20 months afterward before seeking relief. We need not decide whether Gonzalez had sound reasons for not seeking relief *before* February 2016. The district court did not clearly err in finding that he failed to establish sound reasons for waiting to file his petition until October 2017.

The law does not require a coram nobis petitioner to challenge his conviction "at the earliest opportunity," but he must have "sound reasons for not doing so." *Id.* (internal quotation marks omitted). The district court stressed that Gonzalez knew about his deportation consequences "*at the latest* . . . on February 24, 2016," and calculated his delay from that date. Perhaps having "no reason" to question bad legal advice because it "appeared accurate" is a valid excuse for not seeking relief earlier. *See Akinsade*, 686 F.3d at 252; *see also United States v. Kwan*, 407 F.3d 1005, 1013–14 (9th Cir. 2005), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010). But undoubtedly, after a petitioner becomes aware that he received incorrect advice about the immigration consequences of his guilty plea, that is, "aware of the true basis of [his]

13

contention," *Moody*, 874 F.2d at 1578, he cannot wait to file a coram nobis petition without a sound reason. *Ragbir*, 950 F.3d at 64; *Mendoza v. United States*, 690 F.3d 157, 159–60 (3d Cir. 2012). Gonzalez became aware in early 2016 that he had received incorrect advice but waited to seek relief until October 2017.

According to Gonzalez, he did everything he knew he could do after he received the notice to appear in February 2016, and the ensuing delay was only the result of his attorneys' formulating a legal strategy. But the government points out that Gonzalez and his counsel decided "not to do anything for almost a year" because until January 2017 his counsel calculated that Gonzalez would not actually be removed even if he received a removal order. McCoy's testimony makes it apparent that Gonzalez and his counsel did not even begin to consider seeking to vacate his conviction until after the January 2017 policy change. That tactical reason for delay provides the fatal blow to Gonzalez's petition.

The district court committed no clear error when it rejected as a valid reason for delay Gonzalez's assertion that he did not know about the potential for coram nobis relief until August 2017 when he retained Feiler. After all, "procedural ignorance" is not "an excuse for prolonged inattention" when the law calls for diligence. *Johnson v. United States*, 544 U.S. 295, 311 (2005). Gonzalez failed to exercise it.

Gonzalez encourages us to follow the Second Circuit in accepting an excuse similar to his. In *Kovacs v. United States*, the Second Circuit reasoned that "it is improbable that [a petitioner] (or whatever attorney he consulted) would have promptly thought about *coram nobis*, which is as arcane as it is ancient." 744 F.3d 44, 54 (2d Cir. 2014). But there is a problem with Gonzalez's reliance on that authority.

Gonzalez fails to mention that in *Kovacs* our sister circuit made clear that the government did not suggest "any tactical reason" that the petitioner would have delayed pursuit of the writ, had he learned of it sooner. *Id.* Here, the government does. And it makes all the difference.

Gonzalez also points to *Doe v. United States*, 915 F.3d 905 (2d Cir. 2019), and asks us not to blame him for his attorneys' delay. In *Doe*, the petitioner sought to vacate his conviction after he became aware that he was removable, but was actively dissuaded from doing so by officials who assured him that they would procure him citizenship. *Id.* at 908–09, 915. Again, in forgiving that petitioner's delay, the Second Circuit explained that there was no suggestion of a tactical reason for not seeking relief earlier. *Id.* at 915.

*Doe* is distinguishable for the same reason as *Kovacs*. Being actively dissuaded by officials from seeking to vacate a conviction is materially different from one's own counsel deciding to wait and see. *See Howell v. Crosby*, 415 F.3d

15

1250, 1251–52 (11th Cir. 2005) (rejecting federal habeas petitioner's argument that his petition was timely because it was his attorney's fault that it was late). That Gonzalez's attorneys may have thought it best not to challenge his conviction—the result of a "great plea offer"—until the United States changed its policy toward the removal of Cubans is not a sound reason for delay. *See Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992).

Gonzalez also contends that he did not file his petition until after the Supreme Court decided *Jae Lee* in June 2017, because it was not until then that his attorneys were confident that he had "a substantial likelihood of success." But *Jae Lee* did not provide the basis for Gonzalez's claim; it instead strengthened the argument for it. *Cf. Bereano v. United States*, 706 F.3d 568, 576 (4th Cir. 2013). Waiting until a claim is more likely to succeed does not justify a delay in filing a coram nobis petition. *Mendoza*, 690 F.3d at 160.

The district court did not clearly err in finding that Gonzalez failed to justify his delay. And we cannot say it was a mistake to view 20 months as too long to wait without good reason, especially when many years had passed since he could have first brought his claim. *See, e.g.*, *United States v. Riedl*, 496 F.3d 1003, 1005–07 (9th Cir. 2007).

16

Gonzalez strategically waited to cry foul. We will not avert our eyes from that tactic to excuse his delay. The district court did not abuse its discretion by denying Gonzalez's petition as untimely.

## IV. CONCLUSION

We **AFFIRM** the denial of Gonzalez's petition.