[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 20-11188

————————————————

D.C. Docket Nos. 1:19-cv-23420-UU,
1:17-cr-90877-UU-1

ROBERT DEXTER WEIR, et al.,

Petitioners-Appellants,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(July 29, 2021)

Before MARTIN, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Robert Dexter Weir, David Roderick Williams, and Luther Fian Patterson

("Petitioners"), Jamaican nationals, appeal the denial of their petition for a writ of

error coram nobis.  Petitioners were convicted of providing materially false

information to the Coast Guard about their destination in violation of 18 U.S.C. § 2237(a)(2)(B). They argue that their convictions violate the Due Process Clause and the High Seas Clause of the U.S. Constitution. After careful consideration, and with the benefit of oral argument, we affirm in part and reverse in part. The district court lacked jurisdiction to deny Petitioners' Due Process Clause claim on the merits, so we reverse that ruling and remand the case with instructions to dismiss that claim for lack of jurisdiction. However, the district court had jurisdiction to consider Petitioners' High Seas Clause claims and correctly denied those claims, so we affirm that ruling.

## I. BACKGROUND

On September 14, 2017, the U.S. Coast Guard spotted a vessel, later identified as the Jossette, speeding towards Haiti from the direction of Jamaica. The Coast Guard launched a small boat to investigate and intercept the Jossette. The Coast Guard approached and attempted to stop the Jossette, but the vessel quickly began to flee. As the Coast Guard pursued the Jossette, the Coast Guard watched its crew toss approximately 20 to 25 bales of suspected contraband into the water. The Coast Guard officers eventually drew their weapons, and the Jossette ended the chase, stopping in international waters near Haiti.

Weir, the Jossette's captain, told the Coast Guard that the vessel was registered in Jamaica. The Coast Guard contacted Jamaica, which confirmed

2

registration of the Jossette and authorized the Coast Guard to board and search the vessel. When asked about the destination of the Jossette, each member of the crew, including Petitioners, told the Coast Guard that the vessel's destination was the waters near the coast of Jamaica, where they were going to fish. However, that statement was false, as the Jossette's actual destination was Haiti.

On October 18, 2017, Petitioners were named in a criminal complaint alleging a violation of the Maritime Drug Law Enforcement Act ("MDLEA"). See 46 U.S.C. §§ 70503(a)(1), 70506(b). An affidavit in support of the criminal complaint stated that the Coast Guard retrieved several bales in nearby waters matching the description of the bales tossed overboard by the Jossette's crew, which tested positive for marijuana. But later, the government admitted that the Coast Guard did not find any drugs on board the Jossette and that ion scans used to test for illicit substances showed no indication that marijuana had been on board. As such, the government was not sure it could have shown beyond a reasonable doubt that the marijuana was connected to the Jossette.

On December 13, 2017, the government filed an information charging each Petitioner solely with "knowingly and intentionally provid[ing] materially false information to a Federal law enforcement officer during a boarding of a vessel regarding the vessel's destination," in violation of 18 U.S.C. § 2237(a)(2)(B). The information stated that Petitioners "represented to a Coast Guard officer that the

3

vessel's destination was the waters near Jamaica, when in truth and in fact, . . . the vessel's destination was Haiti." Petitioners agreed to plead guilty to this single-count information.

The district court sentenced each Petitioner to ten months of imprisonment and one year of supervised release. They were later released from custody and subsequently removed from the United States to Jamaica. As a result of their convictions, Petitioners are prohibited from reentering the United States without permission.

On August 15, 2019, Petitioners filed a petition for a writ of error coram nobis. Coram nobis is a "remedy available to vacate a conviction when the petitioner has served his sentence and is no longer in custody." United States v. Peter, 310 F.3d 709, 712 (11th Cir. 2002) (per curiam). Petitioners challenged their convictions under section 2237(a)(2)(B) on three constitutional grounds: one challenge under the Due Process Clause and two challenges under the High Seas Clause. Petitioners argued that under those clauses Congress lacked the authority to criminalize their extraterritorial conduct and the district court lacked jurisdiction to convict them. The government opposed the petition. As part of its opposition, the government included a declaration from an officer with the Coast Guard, as designee of the Secretary of State, which was dated November 3, 2017 (the "Secretary of State Declaration" or the "Declaration"). The Declaration stated,

4

"[o]n September 14, 2017, the Government of Jamaica . . . authorized United States law enforcement to board and search" the <u>Jossette</u>.  The Declaration also stated, "[o]n October 9, 2017, the Government of Jamaica consented to the exercise of jurisdiction by the United States."  The district court denied the coram nobis petition, finding that Petitioners did not procedurally default their claims and that Petitioners' convictions did not violate the Due Process Clause or the High Seas Clause.  This is Petitioners' appeal.

## II.  DISCUSSION

We review jurisdictional questions <u>de novo</u>.  <u>United States v. Bane</u>, 948 F.3d 1290, 1294 (11th Cir. 2020).  We review for abuse of discretion a district court's denial of a coram nobis petition.  <u>Gonzalez v. United States</u>, 981 F.3d 845, 850 (11th Cir. 2020).  A district court abuses its discretion if it makes an error of law or makes a finding of fact that is clearly erroneous.  <u>Id.</u>  On appeal, Petitioners argue that the district court erred in denying their coram nobis petition and continue to challenge their convictions under 18 U.S.C. § 2237(a)(2)(B) on three grounds: one challenge under the Due Process Clause and two challenges under the High Seas Clause.[1]  We address these challenges in turn.

_____

[1] As the District Court observed, "Petitioners do not clearly state whether they are mounting a facial or an as-applied challenge to 18 U.S.C. § 2237(a)(2)(B)."  Because Petitioners' briefing in our Court appears to address the constitutionality of their convictions specifically, as opposed to the constitutionality of section 2237(a)(2)(B) more broadly, we treat their claims as as-applied challenges.  <u>See, e.g.</u>, Appellants' Br. at 14 ("Petitioners' convictions violate the Due

5

**A.    Due Process Clause Challenge**

We do not reach the merits of Petitioners' Due Process Clause claim because we conclude the district court lacked jurisdiction over this claim. A court has jurisdiction over a coram nobis petition "only when the error alleged is of the most fundamental character and when no statutory remedy is available or adequate." Lowery v. United States, 956 F.2d 227, 228–29 (11th Cir. 1992) (per curiam) (citation and quotation marks omitted). As such, when a petitioner "fail[s] to pursue" a claim through a "remedy that is both available and adequate," the court cannot review the claim because a procedural default is a jurisdictional barrier to coram nobis relief. See id. at 229. However, this "doctrine of procedural default does not apply" to claims of jurisdictional error. Peter, 310 F.3d at 712–13. This is because a "jurisdictional error implicates a court's power to adjudicate the matter before it, [and] such error can never be waived by parties to litigation." Id. at 712; see also id. at 715–16 ("When a court without jurisdiction convicts and sentences a defendant, the conviction and sentence are void from their inception[.] . . . Accordingly, a writ of error coram nobis must issue to correct the judgment that the court never had power to enter.").

---

Process Clause."); id. at 26 ("Petitioners' convictions also separately violate the High Seas Clause for two distinct reasons.").

Here, Petitioners could have raised their Due Process Clause claim earlier in the criminal proceeding itself or in a 28 U.S.C. § 2255 petition. And they never provided "sound reasons for failing to seek relief earlier." United States v. Mills, 221 F.3d 1201, 1204 (11th Cir. 2000). Because they failed to pursue these available and adequate remedies, they procedurally defaulted this claim.

And although the doctrine of procedural default does not apply to a claim of jurisdictional error, this claim does not raise such an error. To be sure, Petitioners broadly assert that the district court "lacked jurisdiction to accept [their] guilty pleas" and note that such jurisdictional arguments are "not waivable or subject to procedural default." Even so, Petitioners' specific Due Process Clause arguments are rooted in whether their due process rights were violated, not whether the district court had jurisdiction. See, e.g., Appellants' Br. at 3 ("Section 2237(a)(2)(B) did not provide the constitutionally required notice to Petitioners."); id. at 14 ("Petitioners' convictions violate the Due Process Clause."); cf. id. at 15 (arguing the government "lacked jurisdiction to prosecute Petitioners" based on their High Seas Clause challenge).

Petitioners therefore procedurally defaulted their as-applied Due Process Clause challenge, and thus the district court lacked jurisdiction to consider it. Because the district court reached the merits of this claim, we must reverse that

7

ruling and remand the case with instructions to dismiss the claim for lack of jurisdiction.

## B.    High Seas Clause Challenges

We now consider Petitioners' two High Seas Clause claims.[2]  The Define and Punish Clause of the Constitution authorizes Congress to (1) define and punish piracies, (2) define and punish felonies committed on the high seas, and (3) define and punish offenses against the law of nations.  United States v. Campbell, 743 F.3d 802, 805 (11th Cir. 2014); see U.S. Const. Art. I, § 8, cl. 10.  The second grant of power is often called the High Seas Clause (or the Felonies Clause), which is the clause at issue here.  Petitioners raise two challenges under the High Seas Clause.

First, Petitioners argue the "power conferred by the High Seas Clause can only be exercised when the proscribed conduct has a nexus to the United States," and they say "there was no such nexus here."  Petitioners admit this argument is "contrary to binding precedent" in this Circuit.  Indeed, this Court has "rejected the

---

[2] The doctrine of procedural default does not apply to Petitioners' High Seas Clause claims.  If Congress did not validly enact section 2237(a)(2)(B) under the High Seas Clause, then the District Court lacked jurisdiction to convict Petitioners of that offense.  See United States v. Saac, 632 F.3d 1203, 1208–09 (11th Cir. 2011) (addressing an "argument that Congress lacked the authority to enact" a statute under the High Seas Clause and holding "[t]he constitutionality of . . . the statute under which defendants were convicted[] is a jurisdictional issue").  And "the doctrine of procedural default does not apply" to a claim of jurisdictional error.  Peter, 310 F.3d at 712–13.

same argument that defendants make here—that Congress exceeded its constitutional authority under the High Seas Clause in passing a statute that punishes conduct without a nexus to the United States." Saac, 632 F.3d at 1210. Our precedent therefore requires us to reject Petitioners' first challenge.

Second, Petitioners say that under the High Seas Clause, this Court "has consistently held that the extraterritorial application of United States law still must be supported by a principle of extraterritorial jurisdiction recognized by customary international law." Petitioners argue the extraterritorial application of section 2237(a)(2)(B) violates the High Seas Clause because it is not supported by international law. The district court rejected this claim because it found the application of section 2237(a)(2)(B) satisfied various principles of international law.

In response to Petitioners' position, the government argues that Petitioners conflate the question of whether Congress had the authority to enact section 2237(a)(2)(B) under its enumerated powers with the separate question of whether that authority must be supported by a principle of international law. In any event, the government says the extraterritorial application of section 2237(a)(2)(B) here is "fully consistent with international law," so "this Court need not resolve whether the High Seas Clause is constrained by international law." Instead, the government

says this Court can "assume that it is and conclude that such limits are satisfied" on these facts.

Thus, Petitioners' and the government's arguments present two issues. First, we consider whether the extraterritorial application of section 2237(a)(2)(B) here satisfied a principle of international law. Second, we address whether Congress had the constitutional authority to enact section 2237(a)(2)(B) under its enumerated powers. We discuss each issue in turn.

1.    Principles of International Law

Again, Petitioners argue that the extraterritorial application of section 2237(a)(2)(B) violated the High Seas Clause because it did not comply with a principle of international law. We recognize that this Court has addressed principles of international law together with Congress's authority under the High Seas Clause. See, e.g., Saac, 632 F.3d at 1210 ("We now conclude that the [Drug Trafficking Vessel Interdiction Act] is also justified under the universal principle [of international law] and thus a constitutional exercise of Congress's power under the High Seas Clause."). As such, we consider here whether the extraterritorial application of section 2237(a)(2)(B) satisfied a principle of international law. "The law of nations permits the exercise of extraterritorial criminal jurisdiction by a nation under five general principles. They are the territorial, national, protective, universality and passive personality principles." United States v. Romero-Galue,

757 F.2d 1147, 1154 n.20 (11th Cir. 1985) (alteration adopted and quotation marks omitted).

We start with the territorial principle, which was one of the principles relied on by the district court.  Under that principle, a nation has jurisdiction to apply its law in another nation's territory to the extent provided by international agreement with that other nation.  United States v. Ibarguen-Mosquera, 634 F.3d 1370, 1379 & n.6 (11th Cir. 2011).  The district court found the extraterritorial application of section 2237(a)(2)(B) satisfied the territorial principle because Jamaica, the Jossette's flag nation, consented to the Coast Guard's interference with the Jossette as well as to U.S. jurisdiction.  For support, the district court cited decisions by our sister circuits holding that the extraterritorial application of U.S. law to a foreign vessel in international waters satisfies the territorial principle when the vessel's flag nation consents.  See United States v. Cardales, 168 F.3d 548, 553 (1st Cir. 1999) ("In this case, the Venezuelan government authorized the United States to apply United States law to the persons on board [a Venezuelan vessel].  Therefore, jurisdiction in this case is consistent with the territorial principle of international law."); United States v. Robinson, 843 F.2d 1, 4 (1st Cir. 1988) (Breyer, J.) (holding that the vessel's flag nation's consent satisfied the territorial principle, a "perfectly adequate basis in international law for the assertion of American jurisdiction"); United States v. Suerte, 291 F.3d 366, 375 (5th Cir. 2002) ("Malta,

11

under whose flag Suerte's vessel was registered, consented to the boarding and search of his vessel, as well as to the application of United States law.  A flag nation's consent to a seizure on the high seas constitutes a waiver of that nation's rights under international law.").

We agree with the district court's and our sister circuits' application of the territorial principle.  Again, the territorial principle says the United States has jurisdiction to apply its law in another nation's territory to the extent provided by international agreement with that other nation.  See Ibarguen-Mosquera, 634 F.3d at 1379 & n.6.  Similarly, although a foreign-flagged private vessel is usually "not subject to interference on the high seas" by other nations, as it is subject to the flag nation's "exclusive" jurisdiction, "interference with a ship that would otherwise be unlawful under international law is permissible if the flag state has consented." Restatement (Third) of the Foreign Relations Law of the United States §§ 502(2) & cmt. d, 522(2) & cmt. e (emphasis added) [hereinafter "Restatement"].[3]  In other words, when a flag nation consents to the United States interfering with its vessel in international waters or to U.S. jurisdiction over the vessel, that is the "international agreement" under the territorial principle that allows the United

_____

[3] See Sosa v. Alvarez-Machain, 542 U.S. 692, 733–34, 737, 124 S. Ct. 2739, 2766–68 (2004) (citing the Restatement as a "recognized" source of "the current state of international law" because it is "the works of jurists and commentators, who by years of labor, research and experience, have made themselves peculiarly well acquainted with the subjects of which they treat").

12

States to apply its law extraterritorially to that vessel.  See Ibarguen-Mosquera, 634 F.3d at 1379 n.6.  And the flag nation's consent can be given through a formalized agreement, such as a treaty, or through informal means.  See Robinson, 843 F.2d at 4 (stating "nations may agree through informal, as well as formal, means" under the territorial principle); Suerte, 291 F.3d at 376 (citing Restatement § 301 & cmt. b) (stating that such agreements "may be made informally" because "international agreements need not be formalized").  Therefore, consistent with the territorial principle of international law, the United States may interfere with and exercise jurisdiction over a foreign vessel in international waters to the extent provided by consent of the vessel's flag nation.[4]

Applying this principle here, the record shows the extraterritorial application of section 2237(a)(2)(B) to Petitioners satisfied the territorial principle because

---

[4] Petitioners argue that consent of a foreign nation is insufficient to support the extraterritorial application of U.S. law.  For support, they cite United States v. Bellaizac-Hurtado, 700 F.3d 1245 (11th Cir. 2012).  In Bellaizac-Hurtado, while noting that Panama consented to U.S. prosecution of the defendants, this Court held that "drug trafficking is not an 'Offence[] against the Law of Nations,'" and thus Congress could not "constitutionally proscribe the defendants' conduct under the Offences Clause."  Id. at 1247–48.  Under the Offences Clause, Congress only has authority to punish conduct that violates the law of nations.  Id. at 1249.  Petitioners argue that a foreign nation's consent must be insufficient to support the extraterritorial application of U.S. law because otherwise "Panama's consent would have ended the inquiry and resort to the authority conferred by the Offences Clause would have been unnecessary."  Bellaizac-Hurtado is inapplicable.  In that case, this Court only decided that Congress lacked authority to proscribe the defendants' conduct under the Offences Clause because it was not a violation of the law of nations.  The Court never addressed the separate question at issue here—whether Congress's exercise of its authority under its enumerated powers satisfied a principle of international law, such as the territorial principle.  Bellaizac-Hurtado therefore does not foreclose our holding here.

13

Jamaica, the Jossette's flag nation, consented to U.S. interference with the Jossette and to U.S. jurisdiction. As an initial matter, the Secretary of State Declaration says Jamaica "authorized United States law enforcement to board and search" the Jossette on September 14, 2017, which means Jamaica consented to U.S. interference with the vessel the very same day the Coast Guard boarded the Jossette and Petitioners provided the false information. Even so, Petitioners note the Declaration says Jamaica did not consent to U.S. jurisdiction until October 9, 2017, whereas Petitioners provided the false information about three weeks prior on September 14. Based on this chronology, Petitioners argue the United States lacked jurisdiction over them. But while the Declaration says Jamaica consented to U.S. jurisdiction on October 9, 2017, this date preceded the criminal complaint against Petitioners, which was filed on October 18, 2017; this date preceded the information charging Petitioners with violating section 2237(a)(2)(B), which was filed in December 2017; and this date was before the district court entered judgment in January 2018. The Declaration thus shows that Jamaica consented to U.S. jurisdiction over Petitioners before the criminal case began.[5]

_____

[5] The United States and Jamaica also have an agreement under which one nation can consent to the extraterritorial application of the other nation's law. See Agreement Between the Government of the United States and the Government of Jamaica Concerning Cooperation in Suppressing Illicit Maritime Drug Trafficking, State Dep't No. 98-57, 1998 WL 190434 (Mar. 10, 1998). For instance, under the agreement, one nation can "waive its right to exercise jurisdiction" over its vessel and "authorize the other [nation] to enforce its law against the vessel, its cargo and persons on board." Id. at Art. 3(5). Although this agreement is geared towards "combatting illicit maritime drug traffic," id. at Art. 1, the record here shows that the Coast

14

Petitioners say the Declaration should not be considered because it was not part of the record in their criminal case. Rather, the government included the Declaration as part of its opposition to the coram nobis petition. We reject Petitioners' assertion. Petitioners never challenged the United States' jurisdiction until they filed their coram nobis petition. The government therefore had no need to proffer the Declaration until it filed its opposition to the petition. We have allowed the government to "submit evidence in support of its assertion that [an individual's] vessel was subject to the jurisdiction of the United States" when the individual's "failure to challenge the district court's jurisdiction [was] at least partially responsible for the lack of a developed record." United States v. Iguaran, 821 F.3d 1335, 1338 (11th Cir. 2016) (per curiam) (quotation marks omitted). And it's not as if the Declaration was cobbled together in an attempt to gin up U.S. jurisdiction once Petitioners challenged it in their petition. To the contrary, the Declaration was dated November 3, 2017, which was two months before the district court entered judgment in the criminal case and almost two years before Petitioners sought coram nobis relief.

This record thus demonstrates that Jamaica, the Jossette's flag nation, consented to U.S. interference with the Jossette and to U.S. jurisdiction.

---

Guard suspected Petitioners of trafficking drugs and that the government originally intended to charge Petitioners for trafficking drugs. As such, this agreement also demonstrates Jamaica's consent under the territorial principle.

Therefore, the extraterritorial application of section 2237(a)(2)(B) to Petitioners satisfied the territorial principle of international law.[6]

    2.      <u>Congress's Authority to Enact Section 2237(a)(2)(B)</u>

We now consider whether section 2237(a)(2)(B) was a valid enactment under Congress's enumerated powers. Among other powers, the government argues that section 2237(a)(2)(B) was a valid enactment under Congress's powers in the High Seas Clause and the Necessary and Proper Clause. In its view, Congress has authority to criminalize designated felonies in international waters under the High Seas Clause, and section 2237(a)(2)(B), which prohibits providing materially false information to federal law enforcement, is "necessary" to "enforce United States laws criminalizing designated felonies on the high seas."

The Necessary and Proper Clause grants Congress "broad authority to enact federal legislation," as the Clause makes clear that "the Constitution's grants of specific federal legislative authority are accompanied by broad power to enact laws that are convenient, or useful or conducive to the authority's beneficial exercise." <u>United States v. Belfast</u>, 611 F.3d 783, 804 (11th Cir. 2010) (quotation marks omitted). In considering whether the Necessary and Proper Clause authorizes Congress to enact a particular federal statute, we "look to see whether the statute

---

[6] Because we hold that the extraterritorial application of section 2237(a)(2)(B) to Petitioners satisfied the territorial principle of international law, we need not consider the government's arguments on other principles of international law.

constitutes a means that is <u>rationally related</u> to the implementation of a constitutionally enumerated power." <u>Id.</u> (quotation marks omitted).

This Court has held that the MDLEA was a valid enactment under the High Seas Clause. <u>See</u> <u>United States v. Estupinan</u>, 453 F.3d 1336, 1338–39 (11th Cir. 2006) (per curiam). The MDLEA makes it unlawful for a person to "knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance" while on board "a vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(a)(1), (e)(1). This Court has also held that the Drug Trafficking Vessel Interdiction Act ("DTVIA") was a valid enactment under the High Seas Clause. <u>See</u> <u>Saac</u>, 632 F.3d at 1210. The DTVIA prohibits the operation of a submersible or semi-submersible vessel without nationality in territorial waters with the intent to evade detection. <u>See</u> 18 U.S.C. § 2285(a). Because we've established that the MDLEA and the DTVIA were valid enactments under the High Seas Clause, we next consider whether section 2237(a)(2)(B) was "convenient, . . . useful[,] or conducive" or "rationally related" to Congress's implementation of its enumerated power under the High Seas Clause in the MDLEA and the DTVIA. <u>See</u> <u>Belfast</u>, 611 F.3d at 804 (emphasis and quotation marks omitted).

When the Coast Guard or other federal law enforcement seeks to enforce the MDLEA or the DTVIA in international waters, materially false information can

17

hamper that enforcement.  Section 2237(a)(2)(B) therefore helps deter such false information by imposing criminal sanctions, including a fine and/or imprisonment for up to five years.  See 18 U.S.C. § 2237(b)(1).  Indeed, section 2237(a)(2)(B) was enacted to support "law enforcement at sea."  H.R. Rep. No. 109-333, at 103 (2005) (Conf. Rep.).  As such, section 2237(a)(2)(B) was rationally related to Congress's implementation of its enumerated power under the High Seas Clause in the MDLEA and the DTVIA.[7]  Belfast, 611 F.3d at 804.  And even though Petitioners were not convicted of violating the MDLEA or the DTVIA, the record shows the Coast Guard suspected Petitioners of trafficking drugs when it asked about their destination.  Also, the government originally intended to charge Petitioners under the MDLEA for trafficking drugs.  On these facts, section 2237(a)(2)(B) was rationally related to the implementation of the MDLEA and is therefore a valid enactment under the High Seas Clause and the Necessary and Proper Clause.

### III.  CONCLUSION

In sum, the district court lacked jurisdiction to deny Petitioners' Due Process Clause claim on the merits, so we reverse that ruling and remand the case with instructions to dismiss that claim for lack of jurisdiction.  However, the district

---

[7] The government argues section 2237(a)(2)(B) was also a valid enactment under other enumerated powers.  Because we hold that it was a valid enactment under the High Seas Clause and the Necessary and Proper Clause, we need not consider the government's other arguments.

court had jurisdiction to consider Petitioners' High Seas Clause claims and

correctly denied those claims, so we affirm that ruling.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**