# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 19, 2023

Lyle W. Cayce
Clerk

_____

No. 23-30141

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Julius Cerdes, Jr.,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CR-115-1

_____

Before Davis, Engelhardt, and Oldham, *Circuit Judges*.

Per Curiam:[*]

The district court denied the petition for writ of *coram nobis* filed by Defendant-Appellant, Julius Cerdes, Jr., after determining that Cerdes failed to demonstrate sound reasons for not seeking appropriate relief earlier. We conclude, however, that Cerdes had sound reasons for filing his petition when he did. Therefore, we VACATE and REMAND.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

## I.  BACKGROUND

In September 2006, Cerdes pleaded guilty pursuant to a written plea agreement to conspiracy to distribute marijuana.  The factual basis for Cerdes's guilty plea described the events leading up to Cerdes's arrest as follows:   Special Agent Chad Scott with the Drug Enforcement Administration (DEA) and members of the Tangipahoa Sheriff's Department received information from a confidential source (CS) that Cerdes was awaiting the delivery of marijuana from a Hispanic male in a pickup truck.  Based on this information, officers established surveillance at Cerdes's home and nearby workshop on November 14, 2005.

Officers observed a pickup truck matching the description provided by the CS arrive at the location.  A Hispanic male exited the pickup truck, opened the door to the workshop, and then drove the truck into the workshop.  Task force agents subsequently entered the shop and discovered Ramon Quintanilla dismantling a tire on the floor of the workshop.  The dismantled tire contained approximately seventeen pounds of marijuana.  Scott and another officer detained Quintanilla when he attempted to flee.  Quintanilla told Scott he was delivering marijuana to "Junior," a nickname for Cerdes.

A couple of hours later, Cerdes and an individual later identified as Bud Tilley drove up to the residence.  When they exited the vehicle, both men were arrested.  Officers discovered a handgun in Cerdes's back pocket.  They also recovered approximately thirty-nine grams of marijuana from underneath the driver's seat of Cerdes's vehicle.  A review of Cerdes's cellphone records revealed that Cerdes tried to contact Quintanilla that night.  Task force agents searched the property and discovered marijuana in an ammunition can in the bushes and in a PVC pipe and ice chest in the shop, marijuana stems in the garbage can in the master bedroom, a medicine bottle

containing several marijuana seeds in the game room of the residence, and over $45,000 in a duffel bag in the attic.

The Government charged Cerdes and Quintanilla with conspiracy to distribute marijuana (Count One) and aiding and abetting the possession with intent to distribute marijuana (Count Two). Cerdes alone was indicted also for possessing a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) (Count Three). The written plea agreement required Cerdes to plead guilty to the conspiracy charge (Count One). The Government agreed to dismiss the remaining aiding and abetting charge and the § 924(c) firearm charge (Counts Two and Three).

The plea agreement required more than just Cerdes's plea of guilty to the conspiracy charge. It also required him to waive his right to appeal or collaterally attack in any post-conviction proceeding his conviction and sentence. Furthermore, Cerdes was required to withdraw a formal complaint he had made to the DEA regarding misconduct by Scott. Specifically, Cerdes asserted that the marijuana found in his vehicle at the time of his arrest was not his, but had been planted there by Scott. Cerdes explained that after his arrest, he would not consent to a search of his truck, so Scott obtained a warrant to search Cerdes's truck. Three agents and a dog searched the vehicle and found nothing. But, an hour or so later, Scott and another agent walked over to the truck, and Scott announced, "Here it is. Y'all don't know how to look." Scott then came over to Cerdes, holding a bag of approximately an ounce of marijuana, pointed in Cerdes's face, and said, "Now you are going to do more time than the Mexican in your shop." Specifically, Scott "informed [Cerdes] now he had [him] on a gun protecting drugs charge." Cerdes was aware that "there were enhanced punishments for having a gun located with drugs."

Cerdes contended that Tilley informed him that the bag of marijuana actually belonged to him (Tilley); that Tilley gave the bag to one of the officers, who was a friend of Tilley, on the night of the arrest; that the officer gave the bag to Scott; and that Scott put it under the driver's seat of Cerdes's vehicle so that Cerdes could be falsely charged with a firearms offense under § 924(c), which carries a minimum prison term of five years. The plea agreement required Cerdes not only to withdraw his formal complaint to the DEA, but also "not to pursue any other remedies, including any civil action for damages, against any federal agent or police officer for actions taken by them in the investigation of this case." In December 2006, Cerdes was sentenced to eighteen months in prison and two years of supervised release.

Years later, it came to light that Scott and members of his taskforce that targeted drug trafficking were themselves breaking the law. In October 2017, Scott was arrested and later indicted on numerous federal charges for acts he committed while leading the task force. After two trials in 2019 and 2021, Scott was convicted of falsifying government records, obstructing justice, perjury, conspiracy to convert property and to remove property to prevent seizure, and property conversion by a federal officer.[1] He was sentenced to 160 months in prison.[2] This Court recently affirmed his conviction and sentence.[3]

During its investigation of Scott, the Government discovered the formal complaint Cerdes had filed with the DEA regarding Scott's planting Tilley's marijuana in Cerdes's vehicle to create a false § 924(c) offense. The Government interviewed Cerdes regarding his complaint, and he and Tilley

---

[1] *See United States v. Scott*, 70 F.4th 846, 854 (5th Cir. 2023).

[2] *See id.*

[3] *Id.*

both testified for the Government at Scott's August 2021 sentencing hearing. During his testimony, Cerdes admitted that he had a small amount of marijuana on his property and that officers found about an ounce of marijuana in his workshop. However, he denied having marijuana in his truck or having a gun anywhere near marijuana. According to Cerdes, Scott also stole money from his safe on the night of the arrest.

Cerdes further testified that Scott subsequently proposed a deal with Cerdes. Scott agreed to give Cerdes back three boats that had been seized from Cerdes's property if Cerdes would falsely admit that he sold cocaine to another individual Scott previously arrested. However, when Cerdes followed through on his part of the agreement and made the false statement, Scott refused to give Cerdes his boats back and declared that Cerdes was an admitted drug dealer. He contended that "state charges" for "distribution of cocaine" were then placed on him and his bond was set at half million dollars. Cerdes further testified that after that, Scott's team went to his "79-year-old mother's house, who lived next door to [Cerdes], and repeatedly harassed her if [Cerdes] did not turn [him]self in, they were going to arrest her." He testified that the marijuana charges went from state to federal court, where he was denied bond and spent nine months in jail before he was offered the plea agreement he now seeks to nullify.

Cerdes also claimed that he was not guilty of the marijuana conspiracy charge. He explained that he pleaded guilty because he was threatened with a cocaine distribution charge and because the Government agreed to dismiss the § 924(c) charge. On cross-examination, Cerdes denied having knowledge of the pounds of marijuana discovered in the tire in his workshop and explained that Quintanilla's vehicle was in his shop without his permission. He testified that he only had an ounce of marijuana in his workshop and that he was under duress when he signed the factual basis supporting his plea.

Tilley also testified at Scott's sentencing hearing.  He confirmed that he had a bag of marijuana in his boot the night of Cerdes's arrest.  Tilley testified that he knew the officer who had put him in handcuffs that night; that he told the officer he had a bag of marijuana in his boot; that the officer reached in Tilley's boot and retrieved the bag; and that later the officer told Tilley "that the bag of marijuana [Tilley] had was found in Junior Cerdes'[s] truck."  During the Government's argument at Scott's sentencing, it urged the judge to consider Scott's treatment of Cerdes when determining Scott's sentence.

In January 2020, Cerdes filed a petition for a writ of *coram nobis* seeking to vacate his conviction for conspiracy to distribute marijuana.  He asserted that his guilty plea was the product of "extraordinarily abusive, over-reaching, and unconstitutional tactics" by Scott.  Cerdes contended that although he previously had purchased marijuana from Quintanilla for personal consumption only, he never conspired with him to distribute marijuana.  He alleged that Scott planted marijuana in his truck, seized property and money that had no connection to any drug activity, and pressured Cerdes to "say whatever Scott wanted [him] to say in exchange for promises of help on [his] case[]."  Instead, Scott used Cerdes's statements against him to bring a state cocaine charge and ultimately federal drug charges, along with a § 924(c) charge.  Cerdes contended that he pleaded guilty because he was "[b]eaten down by Scott's apparent power to lie, cheat, and manipulate the criminal justice system with impunity, and fear[ed] conviction on the § 924(c) charge which [carried] a mandatory [minimum] five-year sentence."

The district court denied Cerdes's petition for *coram nobis* relief, after determining that Cerdes did not meet his burden of establishing sound reasons for his failure to seek relief earlier.  Cerdes timely filed a notice of appeal.

No. 23-30141

## II. DISCUSSION

Cerdes argues that the district court erred in finding that he did not demonstrate sound reasons for failing to seek appropriate earlier relief. He asserts that the Government's investigation and prosecution of Scott presented a "changed circumstance" justifying his filing for *coram nobis* relief when he did. The Government acknowledges that Scott's convictions represent new evidence previously unavailable to Cerdes, but argues that Cerdes knew about Scott's misconduct from the beginning and could have moved to invalidate his guilty plea earlier, by way of direct appeal or habeas petition.

Although the Government is correct that Cerdes knew of Scott's misconduct early on, we determine that Cerdes nonetheless has demonstrated sound reasons for filing his petition when he did. Cerdes contends that he had every reason to believe that if he took some action contrary to the plea agreement, such as filing a direct appeal or habeas petition based on Scott's misconduct, then there would be adverse consequences or reprisals against him by Scott. He asserts that reasonable fear and apprehension on his part persisted until it became clear that the Government had finally come to recognize Scott as a bad actor. The evidence adduced at Scott's trial and the testimony offered at Scott's sentencing hearing in particular demonstrated just how powerful and dangerous Scott was as a rogue DEA agent.[4] Scott planted evidence to fabricate a charge against Cerdes that carried a minimum five-year prison term; he stole money and property from Cerdes; he tricked Cerdes into falsely admitting that he sold cocaine; and he sent a team to harass Cerdes's 79-year old mother.

---

[4] *See United States v. Scott*, 70 F.4th 846, 852-54 (5th Cir. 2023).

7

The alleged discovery of drugs in Cerdes's vehicle allowed Scott to make his claim that Cerdes's presence in the vehicle, while in possession of a firearm, supported a § 924(c) weapon charge. This count in the indictment, which carried a mandatory five-year sentence, was the principal hammer Scott used to manipulate and coerce Cerdes to enter a guilty plea to the drug trafficking offense. At Scott's sentencing hearing, the Government argued that Scott "repeatedly victimized people and subverted the rule of law." With respect to Cerdes specifically, the Government asserted that Scott "exploited [Cerdes's] vulnerability, put marijuana in his truck to ratchet up a sentence to hurt [Cerdes] in ways that he did not deserve."

Furthermore, the fact that the written plea agreement required Cerdes not only to waive his appellate and habeas rights, but also withdraw his internal affairs complaint describing Scott's misconduct and refrain from filing any other complaint against any law enforcement officer for actions taken by them in the investigation of his case indicated that until the Government discovered Scott's misconduct, the Government would continue to protect him. In light of Cerdes's testimony and the unusual terms of his plea agreement, it was reasonable for Cerdes to be fearful of what would happen if he sought relief from his guilty plea prior to the Government's discovery of Scott's misconduct. Under the unique and extraordinary circumstances of this case, we conclude that Cerdes met his burden of establishing sound reasons for not seeking appropriate relief earlier and that the district court thus erred[5] in finding otherwise.

---

[5] The determination of whether a petitioner for *coram nobis* relief has sound reasons for not seeking appropriate earlier relief is a factual finding; therefore, we review for clear error. *See Gonzalez v. United States,* 981 F.3d 845, 851 (11th Cir. 2020).

No. 23-30141

Based on the foregoing, we VACATE and REMAND for further proceedings consistent with this opinion.